**Thomas ROBERTSON**

v.

**TOKAI SHOSEN K.K.**

**Civ. A. No. 86–2620.**

United States District Court,
E.D. Pennsylvania.

Jan. 16, 1987.

Charles Sovel, Philadelphia, Pa., for plaintiff.

Carl D. Buchholz, III, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me defendant's motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50(a). I have considered the arguments of counsel carefully, the submissions of counsel, and I have also reviewed the statute and the cases, and I conclude that the motion should be granted.[1]

The central questions are (1) whether the vessel's responsibilities regarding stowed cargo differ from the responsibilities regarding the ship itself, its equipment and work space; and (2) if the vessel's responsibilities do differ, how so?

The factual evidence in the case is fairly simple. On May 17, 1983, the plaintiff was employed as a longshoreman by the Delaware Operating Company, an independent stevedoring contractor. Delaware Operating Company had been hired by the defendant to discharge cargo from the M/V Geor-

gia Rainbow in the Port of Philadelphia. Plaintiff was a member of the longshore gang that was assigned to discharge cargo of steel products, including steel wire coils, from the No. 1 hatch.

Plaintiff was injured shortly after he entered the hold at 8:00 o'clock a.m. He was down among the coils, either preparing to start work or having just begun, when one of the coils fell from the top of the stow, striking him in the neck and back, and injuring him. The plaintiff contends that the steel coil was improperly stowed and was unstable and that it was either not lashed at all, or it was improperly lashed. As a result, the plaintiff claims that the vessel's owner was negligent in causing or permitting the steel wire coils to be improperly stowed and in failing to warn the plaintiff of the unsafe condition of the stow before the plaintiff entered the hold. While the plaintiff presented evidence that the vessel did a cursory visual inspection of the cargo before the commencement of discharge operations, there is no evidence that defendant had actual knowledge of any unreasonable hazard presented by the cargo.

Plaintiff brought this lawsuit under section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The statute provides in part as follows:

> In the event of injury to a person covered under this chapter caused by the negligence of the vessel, then such person, or anyone else otherwise entitled to recover damages by reason thereof, may bring an action against the vessel.

Now, the Act also precludes tort recoveries by longshoremen against the stevedoring company but provides that the stevedore pay workers compensation. As the Supreme Court pointed out in the leading case in this area, *Scindia Steam Navigation Company v. De Los Santos*, 451 U.S. 156, at 165, 101 S.Ct. 1614, at 1620, 68 L.Ed.2d 1, and especially in note 13, the statute abrogated the historical right of a longshoreman to recover against the vessel for injuries without regard to the fault of

---

**1.** This Memorandum and Opinion was original-   ly delivered from the bench on January 7, 1987.

the vessel, and substituted the requirement that recovery could be had against the vessel only if the vessel was at fault. In exchange, the workers compensation available from the stevedore to the longshoreman was greatly enhanced. Courts are therefore required to construe the duty of the vessel in a manner consistent with the fault-based principles contained in the Act.

The *Scindia* case discusses the duty owed by the vessel to the stevedores and longshoremen. It is important to keep in mind while reading that case, and also the Third Circuit case of *Griffith v. Whelling Pittsburgh Steel*, 657 F.2d 25 (3d Cir.1981), that both of those cases involve aspects of the ship's equipment and not the cargo on board. The *Scindia* case states the general rule as follows:

> The vessel owes to the stevedore and his longshoremen employees the duty of exercising due care under the circumstances. This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to the longshoreman. Petitioner concedes as much. It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negli-

gently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

■ In short, and somewhat roughly, the vessel has a duty to make the ship itself and the equipment reasonably safe for an expert stevedore, and it has a duty to warn regarding other hazards on the ship.

■ Those aspects of the ship to which the duty of the vessel attaches—the ship itself, equipment, gear, tools and work space—all are generally under the direct control of the vessel. Therefore, failure to take reasonable precautions by the vessel with respect to those items can fairly be said to constitute negligence by the vessel.

■ Cargo is different. While the vessel has operational control over itself and its equipment and deck, it does not have the same level of actual operational control over the stowage of cargo. Rather, vessels hire stevedores—experts in the stowage and handling of cargo—precisely because of their expertise. As *Scindia* clearly points out, the law recognizes the stevedore's expertise in this field, and 33 U.S.C. § 941 requires the stevedore-employer to provide a safe workplace for longshoremen, even within the holds of ships. Indeed, *Scindia* goes farther and holds that in most circumstances the vessel can rely on the stevedore's expertise. The vessel is thus not required to inspect or supervise the stevedore's operation. The *Scindia* court recognized that to hold otherwise could revert to the principle of liability without fault which was rejected in Section 5(b) of the Act. 451 U.S. at 169–70, 101 S.Ct. at 1623.

■ Now, if one may not find the vessel liable for wrongs of the off-loading stevedore under the Act, then one can no more find the vessel liable for wrongs of the on-loading stevedore—assuming for the moment that such wrongs were committed. On the other hand, if the vessel has actual

knowledge of an unreasonable hazard in stowage or otherwise, it has a duty to inform the stevedore, especially if the hazard is latent. And if the vessel observes the stevedore or its longshoremen acting in a clearly improvident manner regarding a hazard known by the vessel to present an unreasonable risk of harm, the vessel has a duty to intervene. *Scindia*, 451 U.S. at 175–76, 101 S.Ct. at 1626. But these principles do not apply in this case. Where, as here, the vessel relied on the loading stevedore in Japan, and there is no evidence that the vessel knew or had any reason to know of a hazard allegedly presented by the means of stowage by the Japanese stevedore, the vessel simply did not breach any duty of reasonable care. The vessel itself was not negligent.

If I were to adopt the position ably advocated by plaintiff's counsel, I would eviscerate *Scindia* and the Act. Otherwise, while the vessel would not be required to supervise and inspect each stevedoring operation, *Scindia*, it would be held to such a requirement at each subsequent port which encountered the condition of the stow. This makes no sense, and would render the principle of fault-based liability of the vessel a nullity.

The cases from the Fourth, Fifth and Ninth Circuits which treat cargo in the same manner as ship's equipment are not true to the principles enunciated in *Scindia* and mandated in the statute. Statements such as those contained in *Turner v. Japan Lines, Inc.*, 651 F.2d 1300, 1304 (9th Cir. 1981) demonstrate pursuit of the laudable goal of fairness, but at the expense of the law as Congress enacted it. The courses charted by those courts may or may not lead to a greater equity, but I believe they are simply not the law. I therefore enter the following order.

### ORDER

AND NOW, this 16th day of January, 1987, it is hereby Ordered that defendant's motion for a directed verdict pursuant to Federal Rule of Civil Procedure 50(b) is GRANTED. Judgment is entered in favor of the defendant and against the plaintiff.

AND IT IS SO ORDERED.