William DERR, Appellant,

v.

KAWASAKI KISEN K.K.

Thomas ROBERTSON, Appellant,

v.

TOKAI SHOSEN K.K.

Nos. 86–1772, 87–1031.

United States Court of Appeals,
Third Circuit.

Argued Sept. 9, 1987.

Decided Dec. 15, 1987.

Charles Sovel (argued), Freedman and Lorry, Philadelphia, Pa., for appellants.

Kevin F. Berry (argued), John Cannon, III, Rawle & Henderson, Philadelphia, Pa., for appellee Kawasaki Kisen K.K.

Carl D. Buchholz, III (argued), Rawle & Henderson, Philadelphia, Pa., for appellee Tokai Shosen K.K.

Before SLOVITER and STAPLETON, Circuit Judges, and FISHER, District Judge.[*]

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act (the Act) to eliminate any liability of a vessel for injuries to longshoremen during cargo operations unless caused by the negligence of the vessel. This case presents, for the first time in this court since the Supreme Court's decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed. 2d 1 (1981), the issue of what liability, if any, a vessel has for injuries to longshoremen caused by cargo improperly loaded by a foreign stevedore.

## I.

### Background

Appellants William Derr and Thomas Robertson were longshoremen injured in separate but similar accidents in which cargo fell upon them during the unloading of the respective appellees' vessels. Derr, who was discharging packages of lumber, was injured when a package fell and struck his foot. Robertson was injured when a coil of steel rod fell from the stow, striking him on the head and back. In both cases,

the cargo had been loaded by independent stevedores in foreign ports. Derr and Robertson were employed by independent stevedores responsible for the discharge of the cargo. The longshoremen filed suits in federal court alleging that the shipowners were liable under section 5(b) of the Act, 33 U.S.C. § 905(b) (1982 & Supp. II 1984), on the ground that their injuries were caused by the vessels' negligence.

Each case was tried to a jury. The juries heard testimony suggesting that the ships had encountered bad weather during passage. In *Derr*, it was stated that the cargo had shifted during the voyage, meaning that considerable movement of cargo had occurred. In *Robertson*, there was testimony that there "may have been some movement but not what we [in the shipping business] call shifting," which is more serious. App. at 166–67. The appellants' expert witness testified that the cargo would probably not have moved or shifted had it been properly secured by the foreign longshoremen.

Derr testified that he was aware of the shift in the cargo prior to the accident, and Robertson presented evidence that the movement of the wire coils was apparent. Both plaintiffs stated that it was not unusual to encounter shifted cargo.

The district court in each case granted a directed verdict for the vessel, holding that under the Supreme Court's decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the vessel had no duty to inspect or supervise the handling of cargo, and no duty to warn of a dangerous cargo condition which is open and obvious or of which it is unaware. *Derr v. Kawasaki Kisen K.K.*, No. 85–5250, bench op., App. at 106–09 (E.D.Pa. Dec. 2, 1986); *Robertson v. Tokai Shosen K.K.*, 655 F.Supp. 152, 154–55 (E.D.Pa.1987). The cases having been consolidated for purposes of appeal, Derr and Robertson contend that the district courts erred as a matter of law.

[*] Hon. Clarkson S. Fisher, United States District Court for the District of New Jersey, sitting by designation.

## II.

### *The Legislative Scheme and* Scindia

Until 1972, a tortured liability triangle was played out on the wharves and piers of America. A longshoreman injured in a cargo operation could receive compensation from the stevedore employer, and also prevail in an action against the vessel on either a negligence or breach of the warranty of seaworthiness theory. To show unseaworthiness, the longshoreman had only to prove that there was an unsafe, injurious condition on the vessel; the fact that the condition was the fault of the stevedore did not protect the vessel, although the vessel might in turn recover from the stevedore for breach of warranty to handle the cargo operation safely. *Scindia,* 451 U.S. at 164–65, 101 S.Ct. at 1620–21.

As Judge Friendly pointed out in *Kakavas v. Flota Oceanica Brasileira, S.A.,* 789 F.2d 112, 117 (2d Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986), this liability scheme produced "an anomalous and intolerable situation." A considerable part of the longshoreman's award ended up in the hands of his lawyer with much of the remainder going to the stevedore's insurers in repayment of the workmen's compensation received. That compensation was inadequate, and the stevedore, instead of being exposed only to the workmen's compensation award, ended up paying the awards made against the ship as well. The system served neither deterrence nor compensation very well. H.R.Rep. No. 1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4702–03 (House Report). *See generally* Note, *Shipowners Owe Longshoremen No Duty to Discover Dangers Arising Within the Confines of the Cargo Operation,* 56 Tul.L.Rev. 1421, 1422–27 (1982) (hereinafter *Tulane Note*).

Congress "radically changed this scheme of things," *Scindia,* 451 U.S. at 165, 101 S.Ct. at 1621 by amending the Act in 1972 to increase the longshoremen's workmen's compensation, *see* House Report at 4700–01, and by adding subsection (b) to section 5 of the Act. That subsection provides, in pertinent part:

> In the event of injury to a [longshoreman] caused by the negligence of a vessel, then such [longshoreman] ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer [the stevedore] shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

33 U.S.C. § 905(b).

The intention of Congress to eliminate the vessel's liability without fault was express and unambiguous. Congress believed that it was fairer, and fully consistent with the goal of promoting safety, for the vessel's liability

> to be predicated on negligence, rather than the no-fault concept of seaworthiness....

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness", "nondelegable duty", or the like.

House Report at 4703.

Congress was less clear in defining the vessel's statutory negligence and its resulting liability. "Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties." *Id.* at 4704. This was the task the Supreme Court took up in *Scindia.*

*Scindia* involved a longshoreman who was injured in an unloading operation as the result of a defective winch that was part of the vessel's equipment being oper-

ated by the stevedore. In its opinion, the Court defined the line between the responsibilities of the stevedore and of the vessel. The vessel has a duty with respect to the general condition of the ship's gear, equipment, tools, and work space, and a duty to warn the stevedore of hidden dangers which are or should be known to the vessel in the exercise of reasonable care, and that are not known or obvious to the stevedore. *Id.* 451 U.S. at 167, 101 S.Ct. at 1622. Also, if the vessel actively involves itself in the cargo operation, or fails to exercise due care in protecting longshoremen from dangers they might encounter from equipment under vessel's active control, it would be negligent. *Id.* However, with respect to cargo not loaded by or under the active supervision of the vessel, the Court explained that the vessel could rely on the expertise of the stevedore. *Id.* at 170–71, 101 S.Ct. at 1623–24; *see, e.g., Kakavas,* 789 F.2d at 118 ("The basic theme of the *Scindia* opinion is the extensive reliance that a shipowner may justifiably place on an independent contractor.").

The stevedore, in turn, who is in the best position to avoid accidents during the cargo operation, has a statutory duty to provide for the safety of longshoremen under 33 U.S.C. § 941 (1982) and warrants to the vessel that he will perform competently. *Scindia,* 451 U.S. at 170–71, 101 S.Ct. at 1623–24. On this basis, the Court stated that "absent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Id.* at 172, 101 S.Ct. at 1624. Against this background, we consider the alleged negligence of the vessels in this case.

### III.

#### *Discussion*

*Scindia* was, of course, a case in which the longshoreman's injury resulted from the malfunctioning of the ship's gear being used in the cargo operations. The Court held that there was a triable issue as to whether the shipowner knew of the defect or was chargeable with such knowledge. *Scindia,* 451 U.S. at 178, 101 S.Ct. at 1627. Appellants here argue that nothing in *Scindia* supports the distinction made by the district courts in *Derr* and *Robertson* between unsafe conditions resulting from the manner in which cargo is stowed and other types of unsafe conditions. This argument is contrary to the Court's analysis in *Scindia,* and we reject it. We read the Court's opinion in *Scindia,* giving effect to Congress' intent "to terminate [the vessel's] automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore," *id.* at 168, 101 S.Ct. at 1622–23, as limiting the vessel's potential liability for injuries caused by faulty stowage of cargo to certain narrow circumstances.

### A.

#### *No Duty to Inspect and Supervise*

■ *Scindia* compels the holding that the shipowner has no duty to supervise or inspect cargo loaded or unloaded by stevedores and therefore may not be held liable for injuries arising out the stevedore's failure to perform his job properly.[1] *Scindia* recognizes that the general rule that vessels have no duty to supervise or inspect cargo operations may not apply where there is "contract provision, positive law, or custom to the contrary." *Scindia,* 451 U.S. at 172, 101 S.Ct. at 1624. No evidence was presented to trigger this exception in the *Robertson* trial, but Derr called Captain Bernard Oudijk, an expert witness, who testified that it was customary in the maritime industry for vessels to observe the loading of cargo. The district court apparently rejected this testimony as a matter of law, believing it to be merely an attempt to restate as a custom the general duty to inspect cargo rejected in *Scindia.*

**1.** To the extent that *Di Rago v. American Export Lines, Inc.,* 636 F.2d 860 (3d Cir.1981), predicated liability on a vessel's duty to inspect or supervise the loading stevedore's cargo operation, it is no longer binding precedent in light of the subsequent decision in *Scindia.*

Even if it were true that a vessel customarily observes the loading of cargo, understandable in light of its potential liability for certain damage to cargo, *see Tulane Note, supra* at 1433, we agree with the district courts that such observation cannot be used to reimpose the general duty to supervise the stevedore. Nor can such observation be vaulted into the type of active involvement and control that would trigger the ship's liability. *Cf. Gill v. Hango Ship–Owners/AB*, 682 F.2d 1070, 1072 n. 1 (4th Cir.1982) (referring to dangerous "packing of the rolls [of paper] by the shipowner in a foreign port"); *Harris v. Flota Mercante Grancolombiana, S.A.*, 730 F.2d 296, 299 n. 2 (5th Cir.1984) (no evidence that vessel used independent stevedore to load cargo).

In a similar effort, the appellants urge this court to revive the duty of supervision by adopting an excessively narrow reading of *Scindia.* Appellants would have it that, while there is no duty to supervise the work of a stevedore "to discover dangerous conditions that *develop* within the confines of the cargo operations," *Scindia*, 451 U.S. at 172, 101 S.Ct. at 1624 (emphasis supplied by appellants), the vessel does have a duty to inspect the cargo before cargo operations begin and therefore *"is charged with knowledge of,* conditions which exist at the *start* of cargo operations." Appellants' Brief at 31.

■ It is true that some courts of appeals have read the law in a manner compatible with appellants' arguments. The *Scindia* rejection of a duty to inspect or supervise cargo operations has been taken to apply only once the stevedore has commenced work, allowing the inference of a stricter duty including an obligation to inspect cargo already loaded before turning the hold over to the off-loading stevedore. *See, e.g., Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983); *Clark v. Bothelho Shipping Corp.*, 784 F.2d 1563, 1565 (11th Cir.1986); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir.1986).

The district court in *Robertson* thought this reading would "eviscerate" *Scindia*

and the Act: "while the vessel would not be required to supervise and inspect each stevedoring operation ... it would be held to such a requirement at each subsequent port which encountered the condition of the stow. This makes no sense, and would render the principle of fault-based liability of the vessel a nullity." *Robertson*, 655 F.Supp. at 155; *accord Scindia*, 451 U.S. at 168–69, 101 S.Ct. at 1622–23 (inconsistent with Act to hold vessel has "continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process"). We agree.

■ Derr and Robertson suggest that although *Scindia* signifies that the vessel may not be liable for the negligence of the American stevedore employer, the shipowner may be held liable for unsafe conditions created by improper stowage by a foreign loading stevedore. They rely chiefly on the decision in *Turner v. Japan Lines, Ltd.*, 651 F.2d 1300 (9th Cir.1981), *cert. denied*, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed. 278 (1982).

The *Turner* court believed that the safety of longshoremen was furthered by making the vessel responsible for cargo loaded by foreign stevedores because, "[a]s between the vessel and the [American] stevedore-employer, the vessel is the only one in a position to ensure the safety of the longshoremen." *Id.* at 1304. Because the offloading stevedore has no control over the foreign stevedore, the vessel can ensure safety "by choosing a reliable foreign stevedore, supervising its work when necessary, and warning the offloading stevedore of concealed dangerous conditions created by the foreign stevedore." *Id.*

We cannot accept the *Turner* analysis. As *Scindia* makes clear, the 1972 amendments are grounded in the belief that stevedores are primarily responsible for the stowage of cargo. 451 U.S. at 170–72, 101 S.Ct. at 1623–24; *cf. Ruffino v. Scindia Steam Navigation Co.*, 559 F.2d 861, 862 (2d Cir.1977) (finding vessel had no duty of care with respect to foreign-loaded cargo in light of congressional intention to "relieve shipowners of liability predicated upon the

negligence of stevedoring companies"). As this court has pointed out before, "creation of a shipowner's duty to oversee the stevedore's activity and insure the safety of the longshoremen would ... saddle the shipowner with precisely the sort of nondelegable duty that Congress sought to eliminate by amending section 905(b)." *Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1249–50 n. 35 (3d Cir.), *quoted with approval in Scindia*, 451 U.S. at 169, 101 S.Ct. at 1623, *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).[2]

Thus the real issue is not where the cargo was loaded, but whether a vessel may be held negligent for failure to inspect or supervise the stowage of cargo. The scheme carefully drawn by Congress and interpreted in *Scindia* does not change because the cargo stowage was performed by foreign stevedores. *See, e.g., Spence v. Mariehamns R/S*, 766 F.2d 1504 (11th Cir. 1985) (making no distinction between duty of vessel to inspect foreign and domestically-loaded cargo). It follows that the district courts did not err in declining to increase the duty on the vessel with respect to cargo because it was loaded by foreign stevedores.

### B.

### *Duty for Ship and Equipment*

Before the 1972 amendments and the *Scindia* decision, the Supreme Court had recognized that the vessel owes to the stevedore and longshoreman "the duty of exercising due care 'under the circumstances,'" *Scindia*, 451 U.S. at 166, 101 S.Ct. at 1622 (quoting *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969)). In *Scindia*, the Court defined the vessel's duty with respect to the ship and equipment thus:

> to exercis[e] ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to

carry on its cargo operations with reasonable safety to persons and property, and to warn[ ] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Id.* 451 U.S. at 167, 101 S.Ct. at 1622; *see also id.* at 172, 101 S.Ct. at 1624; *id.* at 180, 101 S.Ct. at 1628 (Powell, J., concurring).

Thus, we have imposed liability on the ship for injuries resulting from a defect in the hatch covers, *Griffith v. Wheeling-Pittsburgh Steel Corp.*, 610 F.2d 116 (3d Cir.1979), *vacated sub nom. American Commercial Lines, Inc. v. Griffith*, 451 U.S. 965, 101 S.Ct. 2038, 68 L.Ed.2d 343, *on remand*, 657 F.2d 25 (1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), and from a defective gangway which, albeit supplied by the stevedore, became the vessel's gangway, *Sarauw v. Oceanic Navigation Corp.*, 622 F.2d 1168 (3d Cir.1980), *vacated*, 451 U.S. 966, 101 S.Ct. 2039, 68 L.Ed.2d 344, *on remand*, 655 F.2d 526 (1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982).

Appellants do not contend that either of the vessels in this case was defective, or that their equipment, gear, or tools suffered from any defect. Appellants have stressed that the Supreme Court referred to "work space" when it spoke of the ship's duty extending "to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations." *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. We construe that language to refer to the physical work space. The Court could not have intended by this reference to establish a duty by the ship with respect to cargo that it had expressly ne-

---

**2.** *Turner* is also distinguishable from the cases here insofar as the danger in that case was concealed. In dictum, the decision has been limited to that situation by the Ninth Circuit Court of Appeals. *See Taylor v. Moram Agencies*, 739 F.2d 1384, 1387 (9th Cir.1984).

gated in other portions of the opinion. Thus, there was no basis in either of these cases for the jury to have found negligence by the ships on the basis of any defective equipment or gear.

## C.

### Duty to Intervene

The parameters of the vessel's duty to intervene in cargo operations were not fully drawn in *Scindia*. The only discussion in that opinion related to the shipowner's "duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations." *Scindia*, 451 U.S. at 175, 101 S.Ct. at 1626. The Court disapproved of the Ninth Circuit's standard that "if the vessel should realize that the condition presents an unreasonable risk of harm, it is liable if it 'fails to exercise reasonable care under the circumstances' to protect the longshoremen." *Id.* at 174, 101 S.Ct. at 1625. The Supreme Court characterized this as the "duty to inspect thesis," which it had already rejected. *Id.* It was also unprepared to accept the more modest duty imposed in *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848, 856 (2d Cir. 1981), under which "the shipowner's duty is triggered to take steps, reasonable in the circumstances, to eliminate or neutralize the hazard" that the stevedore will not or cannot correct and that the longshoreman cannot avoid. *Id.* 451 U.S. at 175, 101 S.Ct. at 1626. The *Scindia* Court was prepared only to hold that if it were proven that the ship knew of the malfunctioning cargo winch that was part of the ship's own gear, and which it might have a duty to repair, there was a basis for imposition of the negligence liability.

■ It is unlikely that the narrow duty of a ship to intervene to make repairs was intended to extend beyond defective condi-

tions with respect to the ship, its equipment, and gear. *See, e.g., Hodges v. Evisea Maritime Co., S.A.*, 801 F.2d 678, 683 (4th Cir.1986) ("jury could conclude that the vessel had a duty to intervene and exercise its control over the No. 3 hold to eliminate the dangerous conditions of the open hatch and poor lighting"), *cert. denied*, —— U.S. ——, 107 S.Ct. 1572, 94 L.Ed.2d 764 (1987). Since the ship has no duty to inspect the cargo handling operation or the stowed cargo, *Scindia*, 451 U.S. at 178, 101 S.Ct. at 1627; *see Taylor v. Moram Agencies*, 739 F.2d 1384, 1386–87 (9th Cir.1984) ("[t]he scope of the shipowner's duty as set forth in *Scindia* focuses on the character of the ship and its equipment—not on the nature of the cargo"), there would ordinarily be no duty to intervene to remedy dangers created by negligently loaded cargo.[3]

## D.

### Duty to Warn

■ Because the ship has no duty to inspect cargo stowage operations, the ship can be held liable for failure to warn of improper stowage, if at all, when the ship has both actual knowledge and the danger was not open and obvious. The district court in *Derr* found undisputed evidence that the danger was apparent to both the vessel and the stevedore, and that there was no warning that the ship could have given that would have added to the knowledge of a competent stevedore.[4] Indeed, appellant conceded in his brief that even the lack of dunnage and shorage, alleged to be an underlying cause of the accident, "was a condition that could have been discovered by a reasonable inspection of the hold." Appellants' Brief at 46. Consequently, as a matter of law, there was insufficient evidence upon which a jury could find liability. *See Taylor*, 739 F.2d

---

**3.** There was nothing in either case to suggest that the cargo presented an exceptional situation. We leave open the issue of a duty by the ship in such circumstances.

**4.** The district court in *Derr* did not reach the issue of the vessel's actual knowledge of improper stowage. The only evidence even supporting

knowledge was the testimony of the ship's master that "I think there was somebody" assigned to be present to observe the loading of that cargo. App. at 43. This is insufficient, in any event, to show actual knowledge of improper stowage.

at 1386–87. We find no error in the court's analysis or its conclusion.[5]

■ The decision of the district court in *Robertson* was based squarely on the lack of evidence upon which a jury could reasonably have made a finding of actual knowledge, or breach of any duty to know, of the alleged dangerous condition of the cargo. Appellant argues that the evidence of the inspection of the cargo by Cook, an independent cargo surveyor hired by the vessel to check the cargo for insurance purposes, and testimony that the Chief Officer observed the condition of the cargo when the hatch was opened, combined with the fact that the dangerous condition of the cargo "would be immediately apparent to anyone looking in the hold," would have allowed a jury to find actual knowledge. Appellant's Brief at 44–45.

The district court correctly resisted this argument. It recognized, as we have set forth, that to find knowledge of dangerous stowage whenever a person associated with the vessel had reason to examine the cargo would be to reimpose the duty to supervise the stevedore. In any event, appellant's argument proves too much. For if the danger in the cargo was indeed readily apparent "even on a 'cursory' examination," *id.* at 45, then there can be no liability under *Scindia.*

### IV.

#### Summary

■ We hold today that there is no general duty on the part of a vessel to supervise or inspect the work of stevedores, either during or between cargo operations. A vessel can be deemed negligent towards a longshoreman injured because of improperly stowed cargo only if the vessel has breached one of the limited duties referred to in *Scindia.* Appellants produced no evidence from which a jury could reasonably have concluded that any of those duties was breached. We will therefore affirm

**5.** In light of our decision, we need not decide whether the method of stowage was a proximate

the judgment entered by the district courts in *Derr* and *Robertson.*