**James WHITFIELD and Shirley Whitfield, his wife**

v.

**CRAIGWIN CO., LTD.**

Civ. A. No. 87–7921.

United States District Court, E.D. Pennsylvania.

Dec. 22, 1989.

Aloysius J. Staud, Philadelphia, Pa., for plaintiff.

T.J. Mahoney, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

This action was commenced by a longshoreman to recover for injuries sustained while unloading cargo from defendant's vessel. Presently before the court is defendant's motion for summary judgment.

### I.

The relevant procedural background of the case can be summarized briefly. On May 18, 1988, defendant Craigwin Co. Ltd. ("Craigwin") filed a motion for summary judgment with the Honorable Louis C. Bechtle. This motion was denied by Order dated June 9, 1988. On August 16, 1988, defendant submitted a motion for reconsideration of the summary judgment motion. This motion was denied by Judge Bechtle by Order dated November 23, 1988. A conference with the parties was then held in Judge Bechtle's chambers in December 1988, after which the court indicated its belief that defendant was entitled to another reconsideration of its summary judgment motion. On February 9, 1989, the action was reassigned to this court's calendar.

Following the December 1988 conference with Judge Bechtle, defendant submitted a second motion for reconsideration of its summary judgment motion. Because plaintiffs have failed to demonstrate a genuine issue as to any material fact, and because it appears that defendant is entitled to a judgment as a matter of law, defendant's motion will be granted.

### II.

The relevant facts, construed in a light most favorable to plaintiffs, are as follows.[1] On July 14, 1987, plaintiff James Whitfield was working in Camden, New Jersey as a longshoreman aboard the S/S Bergen Arrow, a vessel owned by defendant Craigwin. While unloading certain millwork products, plaintiff was injured when he fell through an improperly constructed wooden framework.[2] This framework had been installed by an independently-contracted loading stevedore in Singapore, the vessel's first loading port. The framework was apparently intended to cover an opening between packages of cargo and to prevent the packages from shifting while in transit.

### III.

■ A motion for summary judgment will be granted if the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

■ In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Following such a showing by a defendant-movant, the plaintiff must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552.

### IV.

■ Included in defendant's motion for summary judgment is the affidavit of Richard G. Ash, Chief Officer of the Bergen Arrow during the events in question. Mr. Ash states:

---

1. While defendant disputes the manner in which the accident in question occurred, it is accepting plaintiffs' version of the facts for purposes of this motion.

2. Mrs. Whitfield has joined in this lawsuit as a co-plaintiff seeking recovery for loss of consortium.

At Singapore, which was our first loading port, the loading and stowage of cargo was accomplished by the Port of Singapore Authority Stevedores, who according to port rules, had to be used by vessels whose operators did not have their own terminal facilities. The Port of Singapore Authority Stevedores supplied necessary labor and their own supervision and also provided and used dunnage wherever they deemed its use to be appropriate for the proper stowage of cargo.

Judge Bechtle initially denied defendant's motion after plaintiffs contended that, contrary to Mr. Ash's affidavit, Craigwin hired and controlled the stevedore used in Singapore. Since the issuance of that Order in June 1988, however, plaintiffs have failed to provide any evidence to contradict Mr. Ash's statement. As such, the court must conclude for purposes of this motion that Mr. Ash's statement is correct, and that the defendant neither employed nor supervised the stevedoring activities in Singapore.

Defendant argues that, in light of the stevedore's independent contractor status, summary judgment is appropriate under the controlling precedent of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), and *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490 (3rd Cir.1987), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988). The court agrees.

The essence of plaintiff's claim is that defendant owed Mr. Whitfield a duty of care, either to intervene and correct the faulty framework or to warn him of the framework's dangerous condition. Under the Supreme Court's holding in *Scindia*, however, a vessel owner owes no general duty to longshoremen to supervise or inspect stevedoring operations. Specifically, the Court stated:

[A]bsent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoreman for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent [in the 1972 amendments to the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b) ] to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits, *is* entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise cargo operations.

*Id.* at 172, 101 S.Ct. at 1624–25 (emphasis in original).

The Supreme Court noted that there may nonetheless exist a duty on the shipowner to intervene "where the danger to the longshoreman arises from the malfunctioning of the ship's gear being used in the cargo operations." *Id.* at 175, 101 S.Ct. at 1626. The Third Circuit has held that this general duty extends to a ship's gear, equipment, tools, and work space to be used in stevedoring operations. *Derr*, 835 F.2d at 493. Such a duty, however, would exist only where the owner knew of the danger, knew that the stevedore was continuing to use the work space or equipment, and knew that such continued use was "obviously improvident." *Scindia*, 451 U.S. at 175, 101 S.Ct. at 1626. The inquiry is thus threefold: (1) whether there was a malfunction in the ship's equipment, tools or work space; (2) whether the vessel owner knew of this malfunction; and (3) whether the stevedore's conduct was so "obviously improvident" as to mandate intervention. *See Brown v. Philippine President Lines, Inc.*, 704 F.Supp. 606, 609 (E.D.Pa.1989).

In the present case, it appears that Mr. Whitfield's injury arose from faulty cargo management, although arguably it was from faulty conditions inherent in the ship's structure itself. As to the former, under *Derr*, plaintiffs' claims clearly are deficient as a matter of law. *See Derr*, 835

F.2d at 496 (the narrow duty of a ship to intervene to make repairs does not extend to cargo management, but only to defective conditions with respect to the ship, its equipment, and gear). As to the latter, plaintiffs have supplied no evidence either that vessel officers were aware of the condition in question, or that they were aware of the loading stevedore's negligent attempt to correct the condition.[3] In addition, plaintiffs have neither alleged that the stevedore's conduct was "obviously improvident," nor supplied evidence even to suggest as much.

Further, there is no indication that the defendant shipowner was in a better position than Mr. Whitfield's employer (the unloading stevedore) to remedy the inadequate framework created by the foreign stevedore. *See Brown,* 704 F.Supp. at 610. As the *Derr* court noted, "*Scindia* compels the holding that the shipowner ... may not be held liable for injuries arising out [sic] the stevedore's failure to perform his job properly." *Derr,* 835 F.2d at 493.

Finally, just as there is no evidence that defendant had a duty to intervene and make repairs, there is likewise no evidence that the defendant had a duty to warn Mr. Whitfield of the dangerous condition. Because a shipowner has no duty to inspect cargo stowage operations, it can be held liable for failure to warn only when it has actual knowledge and the danger was not open and obvious. *Derr,* 835 F.2d at 496. Plaintiffs have offered no evidence to indicate that defendant knew of the dangerous condition. While the openness or obviousness of a danger may ultimately be a question of fact, plaintiffs have not even alleged that the danger was open and obvious. Thus, as a matter of law no duty to warn can be imputed to the defendant shipowner.

The court's holding today is in complete accord with *Bielicki v. Pakistan National Shipping Corporation and Empire Stevedoring Company, Ltd.,* 1987 WL 18854, 1987 U.S. Dist. LEXIS 9683 (E.D.Pa.1987), *aff'd without opinion,* 857 F.2d 1463 (3d Cir.1988), a case very similar to this one. In that case, Judge Weiner held that an unknowing shipowner owed no duty to a longshoreman for the negligent repair work of an independently contracted stevedore.

Accordingly, defendant's motion for summary judgment will be granted.

---

**3.** In his affidavit, Mr. Ash stated that vessel officers are seldom consulted about stevedoring activities since often the longshoremen and stevedore speak a different language than the vessel officers. Mr. Ash went on to say:

> Needless to say I was not aware of any construction in the lower hold of the # 1 hatch such as that recently described by Mr. Whit-field. Had I observed any part of it being put in place I would not have attached any significance to it, trusting to the stevedore that it was necessary and being put together properly for whatever purpose it was supposed to serve. I would presume that the other deck officers would have had a similar reaction....