

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-17-2004

# Marino v. Kent Line Intl

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4263

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Marino v. Kent Line Intl" (2004). *2004 Decisions*. Paper 591.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/591

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4263

_____

JOSEPH MARINO,

Appellant

v.

KENT LINE INTERNATIONAL,
d/b/a VOYAGEUR SHIPPING LTD.;
SLS, INC., d/b/a HOLT OVERSIGHT AND LOGISTICAL TECHNOLOGIES;
INCHCAPE SHIPPING; MAUREEN LEVY; JOSEPH LEVY;
TRANS OCEAN MARITIME SERVICES, INC.

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-04488)
District Judge: Honorable Berle M. Schiller

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 28, 2004

BEFORE: RENDELL and COWEN, Circuit Judges, and
SCHWARZER,[*] Senior District Judge

(Opinion Filed: June 17, 2004)

_____

[*]The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

_____

OPINION OF THE COURT
_____

SCHWARZER, <u>Senior District Judge</u>:

Longshoreman Joseph Marino appeals an order granting summary judgment on his tort claims against Kent Line International ("Kent Line"), the owner of the vessel he was hired to unload; Kent Line's dockside agent, Inchcape Shipping ("Inchcape"); a stevedoring consulting company, Holt Oversight and Logistical Technologies ("Holt"); and Holt's agent, Joseph Levy. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

Because the parties are familiar with the facts, we do not recite them at length. On June 22, 2000, the M/V KENT VOYAGEUR, Kent Line's vessel that was carrying a cargo of steel beams and other construction equipment, docked in Gloucester, New Jersey. On the evening of that day, James McLaughlin, a representative of the stevedoring company Trans Ocean Maritime Services ("Trans Ocean"),[1] inspected the ship to decide whether Trans Ocean's longshoremen could commence unloading the cargo. McLaughlin noted that the beams in hold #3 had been jostled during the voyage and that they were no longer neatly stacked or tied together in bundles. McLaughlin

_____

[1]Trans Ocean was a defendant in this action, but Marino does not appeal the grant of summary judgment in its favor.

decided that the disorder would not prevent the longshoremen from starting their work, and the longshoremen began that evening.

Marino and other Trans Ocean longshoremen resumed unloading cargo from holds #1, #2 and #3 the next morning. The cargo in hold #1 was unloaded from 7:00 a.m. until 12:00 Noon. The stevedore's log reflects that the longshoremen used a shore-based crane throughout this period, although the ship's log shows that the longshoremen ceased using the shore crane at 7:40 a.m. and switched to the ship's own crane. Marino was engaged in unloading steel beams from cargo hold #3. At about 8:30 a.m., one of the beams became unbalanced and fell on Marino's foot, causing serious injury. Marino claims that the ship listed at the moment of the accident, causing the beam to fall.

After Marino filed this action in state court, the defendants removed it to the federal court. The District Court granted summary judgment as to each defendant and Marino timely appealed.

"We . . . exercise plenary review over all . . . issues decided on summary judgment." *Egervary v. Young*, 366 F.3d 238, 245 (3d Cir. 2004). "In so doing, we apply the same test applied by the District Court. Thus, summary judgment is appropriate if . . . there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. at 245-46 (internal quotation marks omitted). We find that summary judgment was appropriate as to each defendant.

3

**DISCUSSION**

Although the 1972 amendments to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), codified at 33 U.S.C. § 905(b), were designed to "shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries, the stevedore-employer," *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 97 (1994), the statute preserves a longshoreman's right to sue a shipowner for certain types of negligence. *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165-67 (1981); *Howlett*, 512 U.S. at 97. The LHWCA leaves shipowners with three duties to longshoremen. "The first, which courts have come to call the 'turnover duty,' relates to the condition of the ship upon the commencement of stevedoring operations." *Howlett*, 512 U.S. at 98 (citing *Scindia*, 451 U.S. at 167). "The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Id.* (citing *Scindia*, 451 U.S. at 167). "The third duty, called the 'duty to intervene,' concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore." *Id.* (citing *Scindia*, 451 U.S. at 167).

I.  **KENT LINE**

      A.    *Turnover Duty*

Generally, "shipowners engage a stevedore for its expertise in cargo operations and are entitled to assume that a competent stevedore will be able to identify and cope with defects in the stow." *Howlett*, 512 U.S. at 104. Thus, the turnover duty is limited; it comprises a duty to provide safe conditions and a corollary duty to warn of known, nonobvious hazards. *Scindia*, 451 U.S. at 167.

We reject Marino's contention that he raised a genuine issue as to whether Kent Line breached its duty to warn when it failed to issue a "letter of protest" telling the stevedore that the vessel had encountered stormy weather that caused the steel beams to become unbalanced. A shipowner's duty to warn about latent dangers in the cargo stow "is a narrow one," extending only to "hazards that are not known to the stevedore and that would be neither obvious to nor anticipated by a skilled stevedore in the competent performance of its work." *Howlett*, 512 U.S. at 105; *see also id*. at 104 ("There can be no recovery . . . for a vessel's failure to warn of dangers that would be apparent to a longshoreman of reasonable competence."). Here, even Marino admitted to observing that the bundles had broken and the beams "were loose and all over the place." The dangers of such a condition would be obvious to any competent stevedore. *See Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 496 (3d Cir. 1987) (affirming finding that a cargo shift in the hold was apparent to the stevedore, and finding that "no warning the ship could have given would have added to the knowledge of a competent stevedore"); *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1259 (9th Cir. 1998) (finding it

5

"incredible" that the stevedore would not be aware of the dangerous condition where steel pipes in the hold were piled unevenly and at various angles to one another).

We also reject Marino's contention that he raised a genuine issue as to whether Kent Line negligently failed to warn the stevedore to use only the on-shore crane when unloading cargo hold #1. The importance of the crane used stems only from Marino's contention that the switch between the on-shore and on-ship cranes caused the ship to list. But the ship's log shows that the switch occurred at 7:40 a.m. Since Marino's accident did not occur until 8:30 a.m., there is no evidence that the switch caused the ship to list at the moment of Marino's injury. Moreover, Kent Line *did* warn Trans Ocean in a memorandum that some cargo in hold #1 was heavy and might require the use of a shore crane. A competent stevedore would recognize situations in which a shore crane should be used, especially when warned beforehand. The weight of the cargo in hold #1 was therefore not a latent hazard. Even if the ship's crane was used to lift too-heavy cargo, the mistake was made by Marino's employer, not Kent Line.

B.      *Active Operations Duty*

The "active operations" duty arises when the shipowner "substantially control[s] or [is] in charge of (i) the area in which [a] hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook." *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 540 (3d Cir. 1994).

6

> A jury may find that the vessel exercised control or took charge over an area either because it never turned exclusive control of the area over to the stevedore but retained substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control, such as by actively intervening in the area.

*Id*. at 541.

Marino asserts that several documents demonstrate such control by Kent Line, but we conclude that none raise a genuine issue of fact. The various emails and memoranda show only that Kent Line made pre-arrival arrangements with the stevedore for unloading the ship, tracked the activities of the longshoremen as they unloaded the ship, and later complained about delays in the unloading operations. None of the documents indicates in any way that Kent Line "actively controlled" the longshoring operations or the hold on the day of Marino's injury. *Cf. Davis*, 16 F.3d at 541 (finding a triable issue of fact on the active operations duty because the shipowner's employees remained on board and performed maintenance on a ship's deck where the longshoremen were working, including spraying the deck with water—in freezing weather—while the longshoremen worked).

Marino also contends that Kent Line had active control over the longshoring operations because it had "substantial control over whether the vessel listed." As discussed above, however, Marino's arguments concerning listing are unavailing; he

has failed to connect the alleged listing with any act by Kent Line. The evidence of record does not suffice to raise a genuine issue of fact.

### C.    *Duty to Intervene*

Marino next contends that Kent Line breached its duty to intervene. We reject Marino's argument because he failed to raise it below. *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 126 (3d Cir. 2002) (holding that an appellant may not "advance new theories or raise new issues [on appeal] to secure a reversal" of a district court's summary judgment order).

### D.    *Marino's Rule 56(f) Motion*

Marino contends that the district court erred in granting summary judgment in the face of his pending motion under Federal Rule of Civil Procedure 56(f) for additional discovery. Marino sought to take the depositions of the captain and two mates of the KENT VOYAGEUR. He argues that their testimony is relevant to what happened to the cargo at sea, to the survey and inspection of the cargo, to the failure to issue a letter of protest, and to the listing of the vessel. "[W]e review a claim that the district court has prematurely granted summary judgment for abuse of discretion." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 510 (3d Cir. 1994). Here, Marino failed to "specify what particular information [was] sought; [and] how, if uncovered, it would preclude summary judgment." *Id.* at 511 (internal quotation marks omitted) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)). Moreover, as the foregoing discussion

8

shows, the testimony Marino sought to elicit would not have precluded summary

judgment  The district court did not abuse its discretion.

## II.   INCHCAPE

Marino's contention that Inchcape violated its active operations duty and its

duty to intervene are similarly unavailing.[2]  His active-operations-duty argument relies on

the same evidence as his argument about Kent Line's duty: the correspondence between

Kent Line and Inchcape discussing the cargo operations plans.  As we held above, that

correspondence contains no evidence that either company was actively involved in the

unloading operation.  Also as discussed above, Marino's duty-to-intervene argument is

waived because he did not raise it in the district court.

## III.   HOLT

We reject Marino's argument that a Holt employee, Levy, was negligent in

allowing the longshoremen to use the ship's crane to unload hold #1.  As discussed

above, Marino has produced no evidence that the use of the ship's crane had anything to

do with his accident.

## IV.   LEVY

Finally, the district court did not abuse its discretion in dismissing the

complaint against Levy for failure to perfect service.  Federal Rule of Civil Procedure

---

[2]The liability standard for a general agent is the same as that for a shipowner under the LHWCA.  *See* 33 U.S.C. § 902(21) (including both shipowners and agents in the definition of "vessel").

4(e) allows service of a complaint at a person's dwelling, or by any method permissible under the law of "the state in which the district court is located, or in which service is effected." Here, Marino attempted to serve Levy by delivering the summons and complaint to Holt's offices in New Jersey. Marino conceded that the court lacked jurisdiction over Levy who lived and worked in New Jersey. Moreover, as the district court found, "[i]t is undisputed . . . that Levy [no longer worked at Holt] and that Plaintiff's counsel was informed of this fact immediately after the summons was delivered." Thus, even if Pennsylvania law, which allows service at "any office or usual place of business of the defendant," PENNSYLVANIA R. CIV. PRO. 402(a)(2)(iii), applied, service was not properly effected. Finally, the district court did not abuse its discretion in refusing to grant an extension of time to perfect service where it had already granted one extension to enable Marino to serve Levy at his home, and trial was just weeks away. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 n.4 (3d Cir. 1996).

## CONCLUSION

For the reasons stated, the judgment of the district court will be

**AFFIRMED**.

10