Thomas W. GRIFFITH, Appellant in No. 78–2159, Appellee in Nos. 78–2160/61,

v.

WHEELING–PITTSBURGH STEEL CORPORATION, Appellant in No. 78–2160, Appellee in Nos. 78–2159 and 78–2161,

v.

AMERICAN COMMERCIAL LINES, INC., Appellant in No. 78–2161, Appellee in Nos. 78–2159/60.

Nos. 78–2159 to 78–2161.

United States Court of Appeals, Third Circuit.

Aug. 11, 1981.

John W. Jordan IV, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for appellee American Commercial Lines, Inc.

William L. Standish, Arthur H. Stroyd, Jr., Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellee Wheeling-Pittsburgh Steel Corp.

Thomas L. Cooper, Gilardi & Cooper, Pittsburgh, Pa., for appellant Thomas W. Griffith.

Before GIBBONS, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case is before us on remand from the Supreme Court, —— U.S. ——, 101 S.Ct. 2038, 68 L.Ed.2d 343, which on May 4, 1981 granted certiorari to review our decision in *Griffith v. Wheeling-Pittsburgh Steel Corp.*, 610 F.2d 116 (3d Cir. 1979), vacated our judgment, and remanded for further consideration in light of its decision in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The parties were requested to file supplemental briefs addressed to the effect of the *Scindia* case on our judgment. Having considered those briefs and the several opinions filed in *Scindia* we conclude that our prior judgment is consistent with the Court's interpretation of Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (hereafter "the Act"), and should be reinstated.

In our most recent opinion [1] we held that the district court judgment against Wheeling-Pittsburgh in favor of the plaintiff must be vacated and remanded for further findings as to Wheeling-Pittsburgh's status as an owner *pro hac vice*. That decision is in no way affected by the Supreme Court's remand. We also held that the district court properly rejected Wheeling-Pittsburgh's claim that if it is an owner *pro hac vice*, it should be fully indemnified by the actual owner, American Commercial Lines, Inc. That holding likewise is unaffected by the Supreme Court's remand. We held, too, that if Wheeling-Pittsburgh is determined on remand to be an owner *pro hac vice*, it and American Commercial Lines, Inc. would be jointly and severally liable to the plaintiff, but the amount for which each would be liable must be redetermined because Wheeling-Pittsburgh would not be liable for contribution for negligence attributable to it in its capacity as a stevedore rather than as owner *pro hac vice*. The Supreme Court's remand in no way affects that holding. Finally, we held that American Commercial Lines, Inc. was negligent in delivering a barge with a defective cover mechanism knowing that workers such as the plaintiff would be thereby exposed to an unreasonable risk of injury for those defects. Only this negligence holding is within the contemplation of the Supreme Court's remand, since we noted in our last opinion, "Wheeling does not contest that, if it was properly held to be an owner *pro hac vice*, it was guilty of negligence in that capacity." 610 F.2d at 127. It did not petition for certiorari, and concedes in its supplemental brief that the only question open to it on remand is its status as an owner *pro hac vice* (Brief of Wheeling-Pittsburgh on Remand at 5). Thus the only question presented by the remand is whether *Scindia* requires us to reconsider our affirmance of the district court's holding that American Barge Lines, Inc. was negligent.

Our interpretation of Section 5(b) of the Act, 33 U.S.C. § 905(b), was as follows:

---

1. Earlier this court reversed an award of summary judgment to Wheeling-Pittsburgh. *See* 384 F.Supp. 230 (W.D.Pa.1974), *rev'd*, 521 F.2d 31 (3d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), *on remand*, 452 F.Supp. 841 (W.D.Pa.1978).

The sounder approach, we think, is to recognize that § 905(b) imposes on vessel owners the same duty to exercise "reasonable care under the circumstances of each case" that would be applicable to a land based business. . . . Proceeding from this broad common law standard, federal courts may develop on a case by case basis a uniform federal law of negligence, referring for guidance to the "land based" standards of care established in the Restatement (Second) of Torts whenever such reference accords with the Congressional intent and is helpful to decision of the case at hand.

At a minimum, we think that the standard of reasonable care under the circumstances would permit a finding of negligence upon a showing: (1) that the vessel knew of or by the exercise of reasonable care could have discovered the condition on board the ship that led to the injury; (2) that the vessel knew or should have known that the condition would pose an unreasonable risk of harm to longshoremen working on board ship; and (3) that the vessel failed to exercise reasonable care to protect the longshoremen against that danger.

610 F.2d at 125–26. Reviewing the district court's application of the standard of reasonable care under all the circumstances, we held that each of these three criteria had been found and that the findings were not clearly erroneous. In particular the court found, and the evidence supported the findings, that American Commercial Lines, Inc. knew of the defective condition of the hatch cover, and was aware that Wheeling-Pittsburgh regularly used a method of removing stuck barge covers which would expose longshoremen to risk of harm. 610 F.2d at 126.

The holding of *Scindia* is that "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that *develop* within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at ——, 101 S.Ct. at 1624 (emphasis added). The case involved a dangerous piece of equipment on the vessel, not found to have been brought to the vessel owner's attention prior to commencement of stevedoring operations, and also improvident use by the stevedore of that equipment, not found to have been anticipated by the vessel owner. In this context, the Court ruled that "as a general matter" the vessel owner was entitled to assume that the stevedore would discover patent defects and avoid the risk they presented. *Id.* ——, 101 S.Ct. 1622. Here, by contrast the district court found that prior to turning control of the barge over to the stevedore, American Commercial Lines, Inc. knew or should have known of the defect, and had reason to believe that Wheeling-Pittsburgh might use a negligent method to remove stuck hatch covers, but took no steps to prevent harm to the injured longshoreman. Thus *Scindia* is clearly distinguishable from this case.

Moreover, we find in the Court's decision support for our interpretation of Section 5(b) quoted above. Referring to the duty owed by a vessel to longshoremen before cargo operations began, Justice White described it thus:

[T]he vessel owes to the stevedore and his longshoremen employees the duty of exercising due care "under the circumstances." This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. 394 U.S. at 416 n.18 [89 S.Ct. at 1151 n.18, 22 L.Ed.2d 371]. The shipowner thus has a duty with respect to the

condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care he has breached his duty and is liable if his negligence causes injury to a longshoreman.

451 U.S. at ——, 101 S.Ct. at 1620. While the quoted language does not deal with the precise situation in this case, of a shipowner with actual knowledge of a defect and a reasonable ground for believing that the stevedore will not remedy the resulting unsafe conditions, it is certainly consistent with the imposition of liability in such circumstances. That interpretation of the opinion of the Court is confirmed by Justice Brennan's concurring opinion:

My views are that under the 1972 Amendments: (1) a shipowner has a general duty to exercise reasonable care under the circumstances; (2) in exercising reasonable care, the shipowner must take reasonable steps to determine whether the ship's equipment is safe before turning that equipment over to the stevedore; (3) the shipowner has a duty to inspect the equipment turned over to the stevedore or to supervise the stevedore if a custom, contract provision, law or regulation creates either of those duties; and (4) *if the shipowner has actual knowledge that equipment in the control of the stevedore is in an unsafe condition, and a reasonable belief that the stevedore will not remedy that condition*, the shipowner has a duty either to halt the stevedoring operation, to make the stevedore eliminate the unsafe condition, or to eliminate the unsafe condition itself.

Since I read the Court's opinion to be consistent with these views, I join the Court's opinion.

451 U.S. at ——, 101 S.Ct. at 1628. (Emphasis supplied).

Even if it remains jointly liable with Wheeling-Pittsburgh *qua* owner *pro hac vice*, American Commercial Lines, Inc. nonetheless submits that its potential share of liability is reduced by *Scindia* because of the significance that decision attaches to a vessel's knowledge of the negligence of the stevedore. American argues that its share of the total award must necessarily be less than Wheeling-Pittsburgh's if the latter's agent had actual, rather than constructive, knowledge of the stevedore crew's poor judgment shortly before the accident happened. However, we discern nothing in *Scindia* which requires that the calculation of comparative fault mirror distinctions between actual and constructive knowledge to the exclusion of all other factors.

The judgment of this court entered upon our opinion reported at 610 F.2d 116, dated August 24, 1979, will be reinstated.