**William J. BROWN and Pamela Brown**

v.

**PHILIPPINE PRESIDENT LINES, INC. and Navios Corporation and Navios Ship Agencies, Inc.**

**Civ. A. No. 87–7325.**

United States District Court, E.D. Pennsylvania.

Feb. 3, 1989.

---

Joseph Lurie, Galfrand Berger, Senesky, Lurie & March, Philadelphia, Pa., for plaintiffs.

Thomas Lane Anderson, Rawle & Henderson, Philadelphia, Pa., for Philippine President Lines, Inc.

Robert G. Kelly, Jr., Kelly, Harrington, McLaughlin & Foster by Thomas E. Seus, Philadelphia, Pa., for Navios Ship Agency, Inc., Navios Management Co.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Before the court are motions for summary judgment by defendants Philippine President Lines, Inc. ("Philippine"), Navios Corporation ("Navios"), and Navios Ship Agencies, Inc. ("Navios Ship"). For the reasons stated below, the motions are granted and judgment is entered in favor of all defendants.

### I. FACTS

The material facts are not disputed. *See* Fed.R.Civ.P. 56(c). On December 22, 1985 plaintiff William Brown ("plaintiff") was employed by United States Steel ("USX") as a welder. Plaintiff was directed to do welding repair work on the Philippine Roxas, docked at the USX facility at Fairless Hills, Pennsylvania. This vessel is owned by defendant Philippine and chartered to defendant Navios. At the time of the accident, defendant Navios Ship was acting as an agent for both defendants Navios and Philippine.

Sometime prior to December 22, 1985, USX employees damaged the vessel while unloading a shipment of USX iron ore. Therefore, USX undertook to do the repair work necessary to return the ship to its original condition. It is not material whether or not USX was required to obtain permission from Navios Ship to do the repair work, since knowledge that the work was being done by USX would not have imposed a duty or obligation to supervise the repair work on Philippine, Navios or Navios Ship. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Anthony Palumbo, also employed by USX, was plaintiff's supervisor on the welding repair work. Because the damaged area was above the reach of the plaintiff, plaintiff asked for a ladder but did not object to Palumbo's decision to use a bulldozer blade as a platform to reach the damaged portion of the ship. At the direction of his USX supervisor, Palumbo, plaintiff stood on the blade of a USX bulldozer used in unloading USX ore. The bulldozer was then raised to the height necessary for plaintiff to reach the damaged portion of the ship.

The distance from the top of the bulldozer blade to the cargo in the hold below was approximately ten feet. In order to balance himself while doing the repair work, plaintiff placed one foot on the bulldozer blade and the other foot on the skin of the ship. Plaintiff testified at deposition that he felt secure in his precarious position and did not believe that doing the repair work from that position placed him at risk of injury. Neither did Supervisor Palumbo think that plaintiff was in a dangerous position. Nevertheless, plaintiff fell ten feet from the top of the bulldozer blade to the ground and suffered injuries as result of his fall. He seeks recovery from Navios, Navios Ship and Philippine for their alleged negligent conduct.

Charles Dimick, of Navios Ship, was present when plaintiff fell from the bulldozer. He was there only to take pictures of the damage done to the ship by USX as an employee of the agent for the ship and its charterer. Dimick had no expertise in ship repair nor did he work in any technical capacity. Dimick stated in his deposition, "I don't know anything about engineering or what's seaworthy or any of that." (Dimick Tr., p. 26). Dimick did not have the power or the authority to tell USX employees how to do their work.

## II. DISCUSSION

Under the Federal Rules of Civil Procedure, summary judgment may be granted only if there exists no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If no such issue of fact is established, summary judgment will be granted if the moving party is entitled to judgment as a matter of law.

The basis of plaintiff's claim is that the vessel owner had a duty to inform plaintiff that it was dangerous for him to do repair work perched on a bulldozer blade suspended in the air. Although defendants did not have a general duty to warn, they did have a duty to warn in instances when the vessel owner or operator had actual knowledge of an unreasonably dangerous condition unknown to plaintiff's employer or to the plaintiff himself.

*Scindia Team Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), governs the standard of care applicable to vessel negligence under the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b). In *Scindia,* plaintiff, a longshoreman, was injured when he was struck by stacks of wheat falling on him because of a defective winch. In affirming the Second Circuit's reversal of summary judgment for the vessel owner, the court held that the vessel's duty to longshoremen did not require the shipowner to inspect or supervise stevedoring operations. Specifically,

absent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoreman for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent to

foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits, *is* entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise cargo operations.

*Id.* at 172, 101 S.Ct. at 1624.

■ The Supreme Court recognized that by the 1972 amendments to the Longshoremen's and Harbor Worker's Compensation Act, "Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for the conditions caused by the negligence or other defaults of the stevedore...." *Id.* at 168, 101 S.Ct. at 1622. Consistent with this, the shipowner does not have an ongoing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process. *See Id.* at 169, 101 S.Ct. at 1623.

■ There may be an exception to this rule "where the danger to the longshoreman arises from the malfunctioning of the ship's gear being used in the cargo operations." *Id.* at 175, 101 S.Ct. at 1626. Under such circumstances, the vessel owner may have a duty to act if the owner is aware of the danger, aware that the stevedore is continuing to use the malfunctioning equipment and the stevedore's judgment in continuing to use the equipment is "obviously improvident." Even this limited duty to intervene must be evaluated in terms of the vessel's reasonable reliance on the stevedore's exercise of professional judgment.

■ Here, the vessel owner clearly did not have a generalized duty to supervise the loading, unloading or repair work being done on the ship. The inquiry must be whether there was a malfunction in the ship's equipment, whether the vessel owner knew of it and whether the stevedore's conduct in using it required the intervention of the vessel owner.

There was no malfunctioning of any of the ship's gear. The bulldozer belonged to USX and was on board for its own stevedoring operations. The USX bulldozer did not malfunction. The shipowner could not have had knowledge of malfunctioning equipment since there was no equipment malfunctioning. Plaintiff argues in opposing the grant of summary judgment that a shipowner's knowledge of misuse of the stevedore's equipment should be evaluated by the same standards used to evaluate use of the ship's malfunctioning equipment. The court is unwilling to make this leap.

■ Ship's gear is the responsibility of the shipowner. The owner must repair and maintain it whether or not the ship is held liable for harm caused by malfunctioning equipment. The same is not true of equipment brought on the ship by the stevedore to aid in cargo operations.

The *Scindia* court was prepared only to hold that if it were proven that the ship knew of the malfunctioning cargo winch that was a part of the ship's own gear, and which it might have a duty to repair, there was a basis for the imposition of liability. It is unlikely that the narrow duty of a ship to intervene to make repairs was intended to extend beyond defective conditions with respect to the ship, its equipment, and gear.

*Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 496 (3d Cir.1987).

The ship is not responsible for the use, maintenance or repair of non-permanent equipment such as the USX bulldozer. The shipowner had no duty or obligation to intervene in a situation involving the abuse or misuse of the stevedore's equipment. Plaintiff charges defendants with knowledge imposing liability because Charles Dimick, an employee of Navios Ship, was present in the hold of the ship. Dimick was there to take pictures of the damaged portion of the ship, not to supervise or partake in the repair in any way. Dimick did not know anything about ship repairs, had no technical knowledge of ships and did not work for defendants in any technical capacity. His coincidental presence in the hold of the ship at the time of the accident, as representative of the shipowner to record the extent of the damage to the ship, is not sufficient to impose

liability on the defendants for the dangerous manner in which USX was repairing the ship. It is unreasonable if not ridiculous to assert that Dimick had knowledge that made him more aware than the USX supervisor or plaintiff himself of the danger of doing welding work with one foot on a bulldozer blade ten feet above the hold and one foot braced against the skin of the ship. Nor is there any evidence from which a jury could conclude that Dimick had any authority to direct the manner in which plaintiff did the repair work for USX or to contradict the express instructions of plaintiff's USX supervisor.

If the danger inherent in plaintiff's position should have been obvious to Dimick, a welder and longshoreman with the combined years of experience of plaintiff and Palumbo must have been able to evaluate the danger also. Plaintiff had the right to refuse to do work in a manner endangering him. Dimick, an agent of the vessel, did not have the ability, responsibility or authority to halt repairs directed by an employee of the stevedore with far more expertise than he. The fortuitous presence of the ship's agent with a camera does not impose any duty on him to monitor repairs by a longshoreman under the supervision of the stevedore just because the supervisor directs that longshoreman to do the repairs in a dangerous manner with the stevedore's own equipment.

Case law subsequent to *Scindia* makes this clear. In *Futo v. Lykes Bros. Steamship Co., Inc.,* 742 F.2d 209 (5th Cir.1984), plaintiff's decedent, an employee of an independent contractor hired to repair defendant's vessel, fell from a scaffold with no guard rail and suffered fatal injuries. Affirming the trial court's grant of summary judgment, the Court of Appeals held that defendant shipowner had no duty to intervene or otherwise act with regard to the dangerous scaffolding because the lack of a railing was a transitory condition, the danger was open and obvious to the contractor and his employees, and the contractor was in the best position to protect against the danger. The court stated,

[t]he independent contractor created the hazard and was in the better position to correct it. The scaffold was not an appurtenance of the ship but was rather a temporary structure created and used entirely by the independent contractor to perform its work. It belonged to and was controlled by the contractor. The lack of a railing was a transitory condition on this temporary structure, and its absence and the danger posed thereby were open and obvious to the contractor and its employees. There was no affirmative act of negligence by the shipowner nor even any expression of acquiescence in the use of the unsafe scaffold. The shipowner assumed no duty with respect to the scaffold. Under the circumstances, we find no basis for imposing liability on the shipowner even if it had the character of actual knowledge....

*Id.* at 218.

Plaintiff claims that defendants here, unlike the defendant in *Futo,* made "an expression of acquiescence" in the use of the stevedore's bulldozer blade as a work platform and that Dimick's presence imputed to defendants knowledge and acquiescence in the method of repair directed by plaintiff's employer. The mere presence of a vessel's employee who has no authority to direct the repair work and less knowledge than the welder or his supervisor, is not sufficient to constitute knowledge and acquiescence on the part of either the vessel owner or operator.

In *Derr v. Kawasaki Kisen K.K.,* 835 F.2d 490 (3d Cir.1987), plaintiffs, longshoremen employed by an independent contractor, were injured while unloading cargo improperly loaded by foreign stevedores. The Third Circuit Court of Appeals affirmed the trial court's grant of directed verdicts in favor of the defendant shipowner because the defendant shipowner had no duty to supervise or inspect cargo loaded by foreign stevedores. The defendant shipowner was not liable because he had done nothing to create or perpetuate the improper cargo loading and was in no better position than the plaintiff's employer (the unloading stevedore) to remedy the dangerous condition created by a third party (the loading stevedore). The *Derr* court

recognized that, *"Scindia* compels the holding that the shipowner ... may not be held liable for injuries arising out [sic] the stevedore's failure to perform his job properly." *Derr,* 835 F.2d at 493.

The instant case is stronger for non-liability because the dangerous condition which existed at the time of plaintiff's injury was not a latent defect nor a defect in any of the vessel's equipment. The danger posed by USX's use of its bulldozer as a work platform was a transitory or temporary condition occasioned by USX's bringing the bulldozer on board to unload cargo; it was not attributable to any act or omission on the part of the vessel owner. As in *Futo,* the dangerous condition was created not by a third party but by plaintiff and plaintiff's supervisor; also, plaintiff and plaintiff's supervisor were not in the same position to recognize and correct the danger as defendants but in a better position.

Plaintiff contends that *Griffith v. Wheeling–Pittsburgh Steel Corp.,* 657 F.2d 25 (3d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), imposes a duty of "reasonable care" on the vessel.[1] In *Griffith,* plaintiff, a longshoreman, was injured when he fell on the defendant's barge when he attempted to open a defective hatch cover. The barge owner was liable because it knew or should have known of its defective hatch cover and had reason to anticipate the stevedore's negligence in removing the defective hatch. Unlike *Griffith,* the present case does not involve defective equipment of the vessel. To the contrary, plaintiff's injuries were caused by his improper use of his employer's bulldozer at the direction and under the control of his employer, USX.

## III. CONCLUSION

Dimick's presence at the time and place of plaintiff's injury is not enough to attribute knowledge imposing liability on the defendant. Dimick was on board to photograph the damage done to the ship by USX not to direct or inspect the welding or ship repair. None of defendants' employees, including Dimick, exercised any control over the repair work. The decision to use the bulldozer as a platform to perform the necessary repairs was made solely by the plaintiff and his supervisor. Plaintiff never discussed the repairs or the manner in which they were to be conducted with defendants' employees. Supervision of plaintiff was the responsibility of USX; the danger posed by the use of the bulldozer blade as a work platform was as open and obvious to plaintiff and Palumbo as to Dimick.

There are no issues of material fact and plaintiff fails to state a cause of action as a matter of law; defendants' motions for summary judgment will be granted.

---

**1.** Plaintiff also relies on *McCarthy v. Silver Line, LTD.,* 661 F.2d 298 (3d Cir.1981) and *Rother v. Interstate and Ocean Transport Co.,* 540 F.Supp. 477 (E.D.Pa.1982). Neither of these cases are controlling as they deal with conditions within the control of the vessel owner. In *McCarthy,* the dangerous condition was caused by the negligence of the shipowner and could not have reasonably been remedied by the stevedore. In *Rother,* the vessel owner created the danger by positioning the barge for the cargo unloading. In both cases, the element creating the danger was within the control of the vessel owner. Here, the danger was created by the manner in which the stevedore performed the work; the vessel owner or operator had no duty to warn or supervise.