William KIRSCH, Appellant,

v.

Prekookeanska PLOVIDBA, Appellee.

No. 91–1915.

United States Court of Appeals,
Third Circuit.

Argued May 4, 1992.

Decided July 30, 1992.

Rehearing Denied Aug. 31, 1992.

Charles Sovel (argued), Freedman & Lorry, P.C., Philadelphia, Pa., for appellant.

Richard Q. Whelan (argued), Gary Francis Seitz, Palmer Biezup & Henderson, Philadelphia, Pa., for appellee.

Before: BECKER, NYGAARD, and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

■ This is a longshoreman's personal injury action that requires us to determine the contours of a shipowner's duty to turn over its ship in a condition that an expert stevedore acting with reasonable care can operate safely. Such a duty is imposed by section 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), as interpreted in *Scindia Steam Navigation Co. v. de los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). We conclude that, under *Scindia*, a shipowner is subject to liability for the injuries of longshore workers who fail to avoid an obvious danger only if the shipowner should have expected that the stevedore and its longshore workers could not or would not avoid the danger and conduct cargo operations reasonably safely.

In this case, the plaintiff-appellant was injured when he slipped and fell while loading cargo aboard a ship owned by the defendant-appellee, as a result, he claims, of the shipowner's negligence in turning over the ship with a large oil slick in a cargo hatch. We conclude that the oil slick, as alleged, was obvious, and that the shipowner could reasonably have relied on the stevedore and its longshore workers to clean up or treat the slick or to have others do so. We will therefore affirm the district court's grant of summary judgment to the shipowner.

## I. FACTS AND PROCEDURAL HISTORY

On May 19, 1989, plaintiff-appellant William Kirsch was employed as a longshoreman by Holt Cargo Systems, Inc. ("Holt"), a stevedore with terminal facilities at Gloucester, New Jersey. The defendant-appellee, Prekookeanska Plovidba ("Prekookeanska") had hired Holt to load cargo containers aboard its vessel, the *M/V Ivangrad*, which had arrived early that morning at Holt's terminal. Prekookeanska turned the ship over to Holt, an expert and experienced stevedore, at 8:00 that morning, and two gangs of longshore workers employed by Holt boarded the ship. Kirsch, an experienced longshoreman, served as a hold worker in the gang headed by James Phillips, which was assigned to load cargo containers in the No. 4 hold.

The cargo containers were of standard size, measuring twenty feet long by eight feet wide by eight feet high. When such containers are loaded into a hold such as the one in the *Ivangrad*, they are secured with "pineapple" clamps, so called because of their resemblance to the fruit. Longshore workers position the clamps in slots in the deck of the hold, then load the containers aboard the ship with a crane and fit them onto the clamps, which are then locked. Workers thereupon climb on top of the first layer of containers and place additional clamps on top of the containers, and the process is repeated for each tier of cargo.

When the Phillips gang, including Kirsch, entered the No. 4 hold, the hold was empty, but they discovered a thin coating of oil covering a substantial portion of the deck of the hold. The origins and size of the oil slick are disputed, but in view of Kirsch's supporting affidavits and deposition testimony, we must assume, for purposes of this summary judgment motion, that (1) the slick was present when Prekookeanska turned the ship over to Holt, and (2) it was so large that the longshore workers could not traverse the deck of the hold without stepping in the oil.[1] The Phillips gang noticed and complained about the oil before the start of cargo operations but none of Holt's employees took any action to have the slick cleaned up or to have traction improved by the apparently customary remedy of placing sawdust on the oil, even though Holt had sawdust available.

The oil on the deck of the hold made the surface slippery, and some of the workers, including Kirsch, slipped while initially searching for the clamps, which were stored in the hold. Although Kirsch did not fall at this time, apparently some of the oil remained on his shoes. Loading of the first tier of containers continued for about fifteen minutes without incident. Shortly before Kirsch's accident, however, another longshoreman had climbed up on top of the first tier to ready clamps for loading of the second tier. Kirsch remained on deck, but when the crane operator inadvertently knocked off one of the clamps, Kirsch

---

1. Prekookeanska adduced evidence that its employees had cleaned and inspected the empty hold several times before the ship was turned over (the last inspection occurring at 7:45 that morning, just fifteen minutes before Kirsch entered the hold), and found no oil. It suggests that oil could not have leaked into the hold during the *Ivangrad*'s voyage and intimates that the oil may have leaked from Holt's crane. It also contends that the oil slick was small and that Kirsch could easily have avoided it. Kirsch, however, contends that members of the ship's crew either were or should have been aware of the oil, that the presence of the oil was Prekookeanska's responsibility, and that it was not possible to cross the hold without stepping in the oil. As noted above, for purposes of Prekookeanska's summary judgment motion, we must accept Kirsch's version of the facts as true.

climbed up on the container to reset the clamp. As Kirsch walked on top of the container, he slipped because of the oil on his shoes and fell eight feet to the deck below, badly injuring his feet.

Kirsch brought suit against Prekookeanska, alleging that Prekookeanska's negligence had caused his injuries.[2] The district court had jurisdiction under 28 U.S.C. § 1331 (1988) and, because Prekookeanska was an instrumentality of the government of Yugoslavia, under 28 U.S.C. § 1330(a) (1988). On September 17, 1991, the district court granted summary judgment for Prekookeanska, explaining its reasoning in a bench ruling. Kirsch filed a timely appeal. We have jurisdiction over the final judgment of the district court under 28 U.S.C. § 1291 (1988). Our scope of review is plenary.

## II. DISCUSSION

### A. *Overview of the Duties of a Shipowner*

Section 5(b) of LHWCA, 33 U.S.C. § 905(b), grants longshore workers a statutory cause of action against negligent shipowners.[3] That section does not, however, specify precisely what standards should be used to gauge a shipowner's conduct. Instead, as the Supreme Court recognized in the leading case interpreting the statute,

Congress left the matter for the courts to resolve. *Scindia*, 451 U.S. at 165–66 & n. 13, 101 S.Ct. at 1621 & n. 13.[4]

In *Scindia*, the Court reiterated that the vessel owes to the stevedore and its longshore employees a duty to exercise due care under the circumstances. Id. at 166, 101 S.Ct. at 1622 (citing *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d 371 (1969). Justice White's opinion for a unanimous Court recognized a shipowner's "turnover duty" comprising both a duty to provide safe conditions and a corollary duty to warn of known, nonobvious hazards:

This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known to the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. . . .

2. Kirsch's complaint also named Associated Container Transportation (USA), the alleged charterer of the *Ivangrad*, but that defendant was voluntarily dismissed.

3. The statute reads:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of [33 U.S.C. § 933], and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury oc-

curred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

4. As the Supreme Court recounted in *Scindia*, the 1972 amendments to LHWCA radically altered the scheme of compensation for injuries to longshore and harbor workers. 451 U.S. at 164–66, 101 S.Ct. at 1620–21. Those amendments increased compensation payments from stevedores to longshore workers but in turn eliminated longshore workers' virtually absolute right to recover against the owners of ships under the doctrine of unseaworthiness. Before the amendments, a longshore worker needed only to prove that the vessel contained an unsafe, injury-causing condition, not that the ship's crew had been negligent. After the amendments, however, longshore workers must prove that the ship's crew was negligent under tort standards comparable to land-based tort standards, which were to evolve as a matter of federal common law. Id.

The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

451 U.S. at 167, 101 S.Ct. at 1622 (citation omitted).

*Scindia* went on to mention a second type of duty, a duty when the ship's crew itself actively participates in cargo operations:

It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

*Id.*

*Scindia* itself turned on the contours of a third type of duty, the ship's crew's duty to intervene after a stevedore has begun cargo operations. In that case, the plaintiff longshoreman alleged that he was injured when he was hit by falling cargo from a pallet that was being held by a winch that was part of the ship's gear. He alleged that the shipowner knew or should have known that the winch had been malfunctioning for several days, but did nothing. The Court held that, absent a contract, positive law, or custom to the contrary, the shipowner had no continuing duty to learn of dangerous conditions by inspecting or supervising the stevedoring operation. *Id.* at 172, 101 S.Ct. at 1624. But the Court also held that, on the facts of that case, if the ship's crew knew or was charged with knowing that the stevedore was "obviously improvident" by proceeding with the defective winch, the shipowner had a duty to intervene and repair the winch. *Id.* at 175–76, 101 S.Ct. at 1626.

The major distinction between the turnover duty and the duty to intervene is that the turnover duty covers the shipowner's conduct before cargo operations have begun, while the duty to intervene addresses conduct after turnover. *Scindia* holds that the shipowner has no continuing duty to inspect or supervise cargo operations conducted by the stevedore *after* turnover. But *Scindia* does not cast any doubt on the shipowner's duty to inspect the ship for hazards *before* turning the ship over to the stevedore, because inspection is integral to providing the stevedore with a reasonably safe workplace, a duty that *Scindia* explicitly recognized. For example, the shipowner's duty to warn the stevedore of hidden dangers necessarily implies a duty to inspect to discover those dangers.

Kirsch alleges only breach of the turnover duty. As discussed above, the basic turnover duty is to turn over the ship in such a condition that an expert stevedore acting with reasonable care can conduct cargo operations reasonably safely. The corollary duty to warn of hidden hazards that a competent stevedore is likely to encounter is not relevant here, because Kirsch admits that the oil slick was obvious to him and his coworkers. Thus the only issue before us is when a shipowner breaches its basic duty to provide safe working conditions by turning over a ship with an obvious hazard.

### B. *The Turnover Duty and Obvious Hazards*

 A shipowner will not ordinarily be liable to a longshore worker injured by an obvious hazard because the shipowner's duty is only to provide a workplace where skilled longshore workers can operate safely. The basic theme of the Supreme Court's decision in *Scindia* is that "[a]s a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." 451 U.S. at 170, 101 S.Ct. at 1623. *Scindia* "plac[es] the primary burden on the stevedore for avoiding injuries caused by obvious hazards." *Id.* at 180, 101 S.Ct. at 1628 (Powell concurring). The Ninth Circuit has observed that the fact that cargo operations will be conducted by an "expert and

experienced" stevedore "implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them." *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1208 (9th Cir.1989). We agree. Accordingly, a shipowner can, ordinarily, reasonably rely on the stevedore (and its longshore employees) to notice obvious hazards and to take steps consistent with its expertise to avoid those hazards where practical to do so.

Thus, where a danger is obvious but easily avoidable, the shipowner will not be liable for negligence. For example, in *Morris v. Compagnie Maritime des Chargeurs Reunis, S.A.*, 832 F.2d 67, 70–71 (5th Cir. 1987), the Fifth Circuit held that where a longshore worker could easily have used ladders other than one that was obviously defective, the shipowner was not liable. In *Bjaranson*, the Ninth Circuit held that where the stevedore could easily have moved a crane rather than used a hazardous ladder, the shipowner did not breach the turnover duty to provide safe working conditions. 873 F.2d at 1208. Similarly, if in this case we could assume that the oil slick were obvious to a reasonably prudent stevedore and its longshore workers but small enough to be avoided easily by skirting it, we would conclude that the stevedoring operations could be conducted safely, and hence that the shipowner was not neg-

ligent in failing to provide a safe workplace.[5]

But in some cases, a shipowner cannot reasonably rely on longshore workers to avoid obvious hazards, and therefore the courts have rejected a bright-line rule that a shipowner can *never* be liable for injuries caused by obvious hazards. For example, if a hazard is obvious yet practically unavoidable, the shipowner can hardly reasonably expect the stevedore or the longshore worker to avoid the hazard. Frequently, this question is one of degree, for the standard is not whether it was absolutely impossible to avoid the hazard, but whether, under all the circumstances, safer alternatives were impractical. See, for example, *Morris*, 832 F.2d at 71 ("longshoreman need not show that he had no possible alternative but ... only that the circumstances made safer alternatives unduly impractical or time-consuming"). In many cases, this fact-intensive question will be inappropriate to decide on summary judgment and must be left for the jury. See, for example, *Treadaway v. Societe Anonyme Louis–Dreyfus*, 894 F.2d 161, 167 (5th Cir.1990) (upholding jury verdict for plaintiff, even though water and oil on the main deck were clearly visible, because there was some testimony that alternate passage was locked).

Moreover, there may be cases where the shipowner cannot reasonably expect that a stevedore (and its employees) will avoid an

---

**5.** We do not believe that the oil spill example given in the legislative history of the 1972 amendments is to the contrary. The committee report included the following discussion:

> So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances. The vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore.

H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. 10–11, reprinted in 1972 U.S.C.C.A.N. 4698, 4704.

That discussion merely underscored that a longshore worker must show that the shipowner had actual or constructive knowledge of the danger before the ship was turned over. The committee was thereby distinguishing a negligence action from the previously available action for unseaworthiness. The barebones discussion foreshadows no conclusion regarding a shipowner's liability for obvious and easily avoidable oil spills.

Of course, as the committee report suggests, the situation where a longshore worker slips and falls on an oil spill that was not obvious to the worker in the performance of his or her duties is the paradigmatic case where an action lies against the shipowner for negligence. In many cases, the obviousness of a hazard will be a reasonably disputed issue of fact inappropriate for resolution by the district court on summary judgment.

obvious hazard even when practical to do so. The Court in *Scindia* suggested that positive law, custom, and contract may supplement a shipowner's duties to longshore workers. 451 U.S. at 172, 176, 101 S.Ct. at 1624, 1626. If, for example, a regulation required shipowners and only shipowners to rectify a specific type of obvious hazard, a shipowner may not reasonably expect a stevedore and its employees to do so. Depending on other regulations or on a custom between the shipowner and the stevedore or within the port or industry, however, the shipowner might still reasonably expect that, upon discovering an obvious hazard, the stevedore would inform the ship's crew so that the crew could rectify the situation.

On the other hand, customary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard. If so, the shipowner may be negligent in not eliminating the hazard, although the plaintiff's recovery may be reduced according to his or her comparative fault. See *Griffith v. Wheeling–Pittsburgh Steel Corp.*, 657 F.2d 25, 27–28 (3d Cir.1981) (*"Griffith II"*) (shipowner who should have known that plaintiff might use a negligent method to remove stuck hatch covers was itself negligent).[6]

We therefore conclude that a shipowner may be negligent for failing to eliminate an obvious hazard that it could have eliminated, but only when it should have expected that an expert stevedore could not or would not avoid the hazard and conduct cargo operations reasonably safely.[7] We note that this holding appears consistent with ordinary principles of land-based tort law set out in sections 343 and 343A of the Restatement (Second) of Torts (1965), which at least two federal courts of appeals have deemed to be an appropriate guidepost in the area. See *Moore v. M.P. Howlett, Inc.*, 704 F.2d 39, 42–43 (2d Cir.1983); *Harris v. Reederei*, 657 F.2d 53, 54–55 (4th Cir.1981).[8] Those sections discuss the duty

**6.** As a general matter, courts have discussed the "open and obvious hazard" issue as a question of the shipowner's duty, rather than under the rubric of comparative negligence. This difference is crucial, for a finding of no duty means that the plaintiff cannot recover at all, whereas a finding of comparative negligence only reduces the plaintiff's recovery by a percentage. The difference is also troubling, because the no-liability result under the "duty" analysis is similar to the result under the outmoded common law tort doctrines of contributory negligence and assumption of risk, doctrines that Congress rejected in 1972 (see *Scindia*, 451 U.S. at 165 n. 13, 101 S.Ct. at 1621 n. 13 (referring to the legislative history)).

At a formal level, we might justify the no-recovery result in some cases as consistent with the treatment of "known and obvious dangers" as a "duty" question in land-based tort law, as exemplified by section 343A of the Restatement (Second) of Torts (discussed in text at pages 1031–33). But see *Griffith v. Wheeling–Pittsburgh Steel Corp.*, 610 F.2d 116, 124–25 (3d Cir.1979) (*"Griffith I"*), vacated, 451 U.S. 965, 101 S.Ct. 2038, 68 L.Ed.2d 343 (1981), judgment reinstated, 657 F.2d 25 (3d Cir.1981). At a practical level, the result is easier to accept when one recognizes that we deal here with a liability triangle that also includes the stevedore, upon whose expertise in cargo operations, the Supreme Court has emphasized, the shipowner may ordinarily rely. The longshore worker is not left without a remedy, for he or she retains a statutory right to compensation from the stevedore.

Unfortunately, few courts have paused to consider this question since *Scindia*. For the Fifth Circuit's discussion of this issue, see *Morris*, 832 F.2d at 71.

**7.** The district court in this case relied heavily on *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490 (3d Cir.1987), but that case is inapposite. *Derr* primarily held that a shipowner has no general duty to supervise or inspect the work of stevedores, during or between cargo operations. In so holding, we rejected the position of the Fifth and Eleventh Circuits that the shipowner has a duty to inspect cargo already loaded before turning the hold over to an offloading stevedore. Id. at 493–95. While *Derr* discussed the turnover duty, it held that that duty applied only to the vessel's equipment and physical workspace, not to cargo. Id. at 495–96. In this case, the No. 4 hold was empty when Kirsch boarded the *Ivangrad*, and Kirsch's claim, unlike those of the appellants in *Derr*, is premised on unsafe workspace conditions. *Derr* also found no duty to intervene or to warn of the condition of the cargo, id. at 496–97, but those duties are not at issue in this case.

**8.** On the other hand, the Fifth Circuit has read *Scindia* as adopting a significantly more stringent test than the Restatement. See *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1037–39 (5th Cir. 1983). *Helaire* read *Scindia* to require that, to breach the duty to intervene, the shipowner

of a landowner to his or her invitees. Under section 343A(1) of the Restatement, a possessor of land is not liable to invitees (including business invitees) for injuries caused by dangers known or obvious to them, "unless the possessor should anticipate the harm despite such knowledge or obviousness."[9]

The Supreme Court observed in *Scindia* that although the legislative history of the 1972 amendments suggested that land-based tort principles should be employed, the legislative history did not refer to the Restatement test, and that because the lower courts had disagreed on how to apply the Restatement test in the maritime context, "those sections, while not irrelevant, do not furnish sure guidance ..." 451 U.S. at 168 n. 14, 101 S.Ct. at 1622 n. 14. It also mentioned a test adopted by the Second Circuit based on the Restatement test and noted that it was "presently unprepared to agree that the shipowner ha[d] precisely th[at] duty." Id. at 175, 101 S.Ct. at 1626. Nevertheless, the Court proceed-

ed to adopt a test arguably similar to the Restatement test. See id. at 180 n. 1, 101 S.Ct. at 1629 n. 1 (Powell concurring) (reading Restatement standard as consistent with Court's holding, although the Court found it unnecessary to adopt that standard fully).

The status of the Restatement test in this circuit after *Scindia* is somewhat uncertain. In *Griffith II*, 657 F.2d at 26–28, we reinstated the judgment that had been based on our earlier opinion in *Griffith I*, 610 F.2d 116 (3d Cir.1979), which the Supreme Court had vacated for reconsideration in light of *Scindia*. Although our earlier opinion discussed the relevance of the Restatement, our opinion on remand did not. We merely concluded that it was consistent with *Scindia* to hold liable a shipowner who knew or should have known of defective hatch covers and had grounds to believe that the stevedore would not remedy the resulting unsafe conditions. That decision, which we cited earlier, is consistent with our analysis above.[10]

---

must have had actual knowledge of a danger and actual knowledge that the stevedore and its employees would do nothing to protect themselves from the danger. Id. at 1038. That requirement seems in tension, however, with *Scindia*'s statement that "[t]he same [duty to intervene] would be true if the defect existed from the outset and Scindia must be deemed to have been aware of i[t]s condition." 451 U.S. at 176, 101 S.Ct. at 1626.

**9.** The two sections, which are to be read together, provide in full:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
§ 343A. Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless

the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

**10.** In *McCarthy v. Silver Line*, 661 F.2d 298 (3d Cir.1981), and *Sarauw v. Oceanic Navigation Corp.*, 655 F.2d 526 (3d Cir.1981), we also reinstated opinions that the Supreme Court had vacated for reconsideration in light of *Scindia*. Neither opinion on remand discusses the Restatement, and both are consistent with our analysis above. In *McCarthy*, the jury found that the shipowner knew of a dangerous condition that a reasonable stevedore could not have remedied. 661 F.2d at 299. Even if the danger was obvious, which the opinion does not discuss, the shipowner could not reasonably have assumed that the stevedore could avoid the danger. In *Sarauw*, we held that a defective gangway was not within the confines of cargo operations, and hence was still the responsibility of the ship. 655 F.2d at 528. See also id. at 529–30 (Adams concurring) (concluding that shipowner had both an "active intervention" duty and a duty created by custom to inspect and supervise the gangway). The case thus appears not to have turned on the turnover duty and is not on point here.

Like the Supreme Court in *Scindia*, we see no reason to adopt or reject the Restatement test here. Our holding here can be viewed as a refinement of that test that is appropriate to this industry in light of the principles discussed in *Scindia*. Moreover, we believe that our conclusion—that a shipowner may be liable for failing to eliminate an eliminable obvious hazard only if it should have expected that its expert stevedore would not avoid the hazard and conduct cargo operations safely—suffices to resolve this case.

### C. *Application to the Facts of this Case*

We now evaluate Prekookeanska's conduct in light of this standard of liability. Although in many cases the obviousness of a hazard under all the circumstances, which includes as a key element the appreciability of the danger, will be a jury question, in this case it is not. Kirsch candidly admits that the oil slick on the floor of the hold was obvious to all. He testified that he knew of the oil the second he entered the hatch, before the first clamp had been set and before the first container was loaded. The longshoremen in fact complained about the oil, which indicates that they appreciated the danger. Those facts alone, however, do not conclude the analysis.

First we must consider whether the stevedore, Holt, and its longshore employees could have, in a practical manner, avoided the danger, for if they could not have, then Prekookeanska could not reasonably have expected that Holt's workers could conduct cargo operations safely. Under the facts as we must assume them, the oil slick was so large in area that Kirsch and the other longshore workers could not have crossed the hold without trekking through the oil.

Kirsch claims that this suffices to defeat summary judgment, but we disagree. Holt and his cohorts had another option—to eliminate the obvious hazard by treating or cleaning up the oil slick themselves or by telling the ship's crew to do so.

The question therefore becomes whether Prekookeanska could reasonably have relied on Holt and its employees to treat or clean up a preexisting oil spill or to have that done. On this score, as in *Scindia*, the regulations of the Occupational Safety and Hazard Administration (OSHA) are relevant, although not conclusive. See 451 U.S. at 176–78, 101 S.Ct. at 1626–27. OSHA's regulations for stevedores, enacted pursuant to 33 U.S.C. § 941 (1988), require that "[s]lippery conditions shall be eliminated as they occur." 29 C.F.R. § 1918.91(c) (1991). Even if Kirsch is correct that the OSHA regulation does not require the stevedore to eliminate slippery conditions that came into being before the stevedore assumed control, the regulation nonetheless indicates that stevedores are considered competent to treat oil spills, a typical form of slippery condition during cargo operations. Indeed, sawdust was available for precisely that purpose, and Kirsch has not contended that the workers were under such a tight time schedule that it would have been impractical for Holt to eliminate the hazard.[11]

Notwithstanding the regulation, Kirsch would be able to defeat summary judgment if he could offer evidence that, in light of custom between Prekookeanska and Holt (or at that port or in this industry), Prekookeanska would have acted unreasonably to assume that Holt's workers would avoid the danger. Kirsch has produced no evidence of such a custom or course of con-

---

11. Kirsch contends that even if Holt had placed sawdust down, that would only have increased traction when he walked through the oil, but would not have prevented oil from remaining on the soles of his shoes, and so would not have prevented his fall. For the sake of argument, we can accept that claim as true, but it cannot defeat summary judgment. First, Kirsch has offered no evidence that use of sawdust in this circumstance would not have been an act of reasonable care. Indeed, after Kirsch's fall, sawdust was laid down and loading continued uneventfully. If Prekookeanska would have acted with reasonable care had it put sawdust down before Holt's workers boarded the *Ivangrad* and Kirsch had still fallen, then Kirsch's injuries would not have been traceable to *negligence* on Prekookeanska's part. Second, even assuming that the proper response was not to put down sawdust but instead to scrub up the oil altogether, it would appear that Holt was capable of doing that or of notifying the ship's crew to have that done.

duct in this case. He himself merely testified in his deposition that he expected the ship's crew to clean up the oil spill, which is not the same thing. Kirsch did not testify, for example, that stevedores and longshore workers frequently proceed with cargo operations in holds despite large oil slicks there, which might imply that Prekookeanska should have expected that they would do so here.

Kirsch's gang boss, Phillips, testified in his deposition that, if informed about an oil slick like the one Kirsch alleges, he would normally inform the ship's crew, which would then take care of the problem. But that testimony indicates, if anything, that Prekookeanska could rely on Holt to notify it of oil spills that Holt would not rectify. Phillips's statement is not evidence that Prekookeanska should have expected that longshore workers frequently proceed despite such obvious hazards.

Kirsch also fails to cite any specific provisions of the stevedoring contract between Holt and Prekookeanska that arguably address the parties' responsibilities regarding the treatment of oil spills discovered during stevedoring operations. Kirsch asserts that, as a general matter, stevedores are paid to load and unload cargo, not to clean up oil spills. That may be so, but it hardly follows that Prekookeanska should assume that when oil spills do occur, the stevedore and longshore workers will ignore them.

Therefore, although we must assume that Prekookeanska should have known of the oil spill, Kirsch has presented insufficient evidence that Prekookeanska should not have assumed that Holt and its employees would avoid the obvious danger that the spill allegedly presented. Accordingly, Prekookeanska was not negligent, and the district court's award of summary judgment to Prekookeanska will be affirmed.