James McCOURT and Donna
McCourt, Plaintiffs,

v.

MITSUI O.S.K. LINES AMERICA, INC.,
and Pacific Venture Shipping, S.A.,
Defendants.

Civil A. No. 95–2730 (JCL).

United States District Court,
D. New Jersey.

April 17, 1996.

# 1316

Mitchell L. Goldstein, Mandelbaum, Salburg, Gold, Lazris, Discenza & Steinberg, West Orange, NJ, for Plaintiffs.

Michael D. Wilson, Daniel B. Carroll, Kirlin, Campbell & Keating, Caldwell, NJ, for Defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Pacific Venture Shipping S.A., the only defendant remaining in this action, has moved for summary judgment. For the reasons set forth below, the Court will grant defendant's motion.

*Background*

Plaintiff James A. McCourt ("McCourt") and his wife, Donna McCourt, filed this negligence action against Pacific Venture Shipping, S.A., owner of the vessel M/V Cosmo Venture, as a result of an accident that occurred aboard the ship on June 30, 1992. On that day, plaintiff, a longshore worker, was employed by stevedore Maher Terminals as a member of a gang of longshore workers that went aboard defendant's ship for the purpose of unloading automobiles. Maher Terminals, a contract stevedore, was hired by defendant's agent to discharge the vessel.

The longshore workers were to remove the vehicles from the vessel by driving them down ramps between successive deck levels until they reached the exit level, where they were to drive off the ship and park in an adjacent lot. The workers would then return to the vessel via van, walk up stair cases to the level from which the vehicles were being discharged, and repeat the process.

On approximately his third trip from the discharge level through the ship, plaintiff deviated from the intended discharge pattern, which proceeded in a "corkscrew" fashion through ramps located one below the next. Instead, plaintiff drove along the length of the ship's No. 3 deck to another set of ramp openings and attempted to proceed to the next deck level through these openings. However, no ramp was in place on this end of the ship, and the automobile operated by plaintiff plunged through the open hole in the deck and came to rest with its rear tires on the ship's No. 3 deck and its front bumper or front tires below on the ship's No. 4 deck. Plaintiff struck his head and throat on the windshield and steering wheel, sustaining serious injuries.

Defendant contends that the stevedore had clearly marked the "corkscrew" exit pattern from the ship with orange cones, arrow markers, and painted lines on the floor. Gill Dep. at 28. Defendant insists that in order for plaintiff to have reached the deck opening though which he fell, he must have disregarded the safety measures employed by the stevedore. Gill Dep. at 23. Plaintiff, on the other hand, avers that there were no directional signs present whatsoever. McCourt Dep. at 34. Nothing in the record indicates that the opening through which plaintiff's car fell was marked or protected by ropes, tape or chains. McCourt Dep. at 38–39; Gill Dep. at 30. Defendant's witness has testified that such precautions are customarily installed around a deck opening when no ramp is in place. Gill Dep. at 29.

Based on the law governing shipowners' liability to longshore workers, defendant argues that it is entitled to summary judgment in spite of these disputes regarding the safety precautions in place at the time of plaintiff's accident.

*Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure directs a district court to grant summary judgment:

if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of showing that no genuine issue of material fact exists rests initially with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). If the moving party shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party may establish that the case presents a genuine issue for trial by showing that there is sufficient evidence favoring the non-moving party to enable a reasonable fact finder to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. In evaluating a motion for summary judgment, the court must view the facts, and the reasonable inferences therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

*Longshoremen's and Harbor Workers' Compensation Act*

Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), as amended in 1972, 33 U.S.C. § 905(b), provides a longshore worker's sole remedy against a vessel owner for injuries incurred while loading or unloading cargo from a vessel. Section 905(b) provides:

> In the event of an injury to a person covered under this chapter caused by the negligence of a vessel, then such person … may bring an action against such vessel as a third party … If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in pro-

viding stevedoring services to the vessel … The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

The 1972 amendments to the LHWCA placed primary responsibility for the safety of longshore workers on the shoulders of their employers, the stevedores. Section 41 of the Act, 33 U.S.C. § 941, requires the stevedore, as the longshore worker's employer, to provide a "reasonably safe" place to work and to take the safeguards necessary to avoid injuries. The Act, as amended, grants an injured longshore worker primary recovery against his stevedore employer, and limits the liability that may be imposed against the vessel. Congress based the 1972 amendments on its observation that stevedores are in the best position to prevent injuries to longshore workers. *See Scindia Steam Nav. Co., Ltd. v. De Los Santos,* 451 U.S. 156, 170–72, 101 S.Ct. 1614, 1624, 68 L.Ed.2d 1 (1981).

The Supreme Court has twice elaborated upon the scope of a vessel's statutory liability to longshore workers employed by a stevedore. First in *Scindia,* 451 U.S. at 156, 101 S.Ct. at 1614, and more recently in *Howlett v. Birkdale Shipping Co., S.A.,* —— U.S. ——, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994), the Court defined three duties owed by a vessel to longshore workers who come aboard to load or unload cargo: the "turnover duty," also known as the duty to warn, the "active operations duty" and the "duty to intervene." *See Howlett,* —— U.S. at ——, 114 S.Ct. at 2063. In this case, plaintiff argues that the record establishes disputes of fact material to defendant vessel owner's satisfaction of its turnover and active operations duties. As the parties agree that the duty to intervene is not implicated by the facts of this case, the Court will not elaborate upon it further.

*Defendant's Turnover Duty: Obviousness and Avoidability*

■ Interpreting the LHWCA, the Supreme Court has determined that, upon turn-

over of the vessel to the stevedore, the vessel owner has the duty of:

exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and of warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not obvious to or anticipated by him if reasonably competent in the performance of his work.

*Howlett,* ——— U.S. at ———, 114 S.Ct. at 2063, *quoting Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

■ Applying *Scindia,* the Court of Appeals has further elaborated upon this duty as follows:

[A] shipowner can, ordinarily, reasonably rely on the stevedore (and its longshore employees) to notice obvious hazards and to take steps consistent with its experience to avoid these hazards where practical to do so . . . Thus, where a danger is obvious but easily avoidable, the shipowner will not be liable for negligence.

*Kirsch v. Plovidba,* 971 F.2d 1026, 1030 (3d Cir.1992). In *Kirsch,* the shipowner turned over its vessel for loading with a large oil slick in the cargo hold. The stevedore saw the oil, which was plainly visible, but took no action to clean it, treat it, or to have these things done. *Id.* at 1027–28. In the course of loading the vessel, plaintiff longshoreman stepped in the oil and later slipped on oil left on the bottoms of his shoes. *Id.* The Third Circuit upheld the lower court's grant of summary judgment because the oil slick that caused the accident was obvious and easily avoidable by the stevedore. The court commented that "a shipowner may be negligent for failing to eliminate an obvious hazard that it could have eliminated, but only when it should have expected that an expert stevedore could not or would not avoid the hazard and conduct cargo operations reasonably

safely." *Id.* at 1031. This Court must therefore determine whether the record evidences a dispute of fact as to the obviousness or avoidability of the danger that caused plaintiff's accident.

■ Don Gill, an agent of Mitsui O.S.K. Bulk Shipping, testified at deposition regarding the events surrounding the accident as well as the practices commonly used in shipping automobiles. Gill attended the vehicle discharge on the day of plaintiff's accident as an agent of defendant, Pacific Venture. Gill is, and was at the time important here, the Manager of Marine Operations for Mitsui, charged with supervising the discharge of automobile vessels at various ports on the east coast. Gill Dep. at 8. It is not disputed that Gill is qualified to testify as to the practices commonly employed by stevedores and vessels when unloading automobiles.

Gill testified that adjustable ramps aboard auto carriers are generally adjusted by the stevedore (Gill Dep. at 17), who establishes and directs the automobile discharge procedure without interference from the shipowners. Gill Dep. at 11–13. This testimony is not contradicted by any evidence submitted by plaintiff. Even viewing this testimony in the light most favorable to plaintiff, the Court is constrained to conclude that adjustable ramps are a type of hazard commonly encountered by and obvious to an expert and experienced automobile stevedore. *See Howlett,* ——— U.S. at ———, 114 S.Ct. at 2063. The Court is aware of the Third Circuit's caution that obviousness is often a fact-specific inquiry requiring the fact-finding role of the jury. *Kirsch,* 971 F.2d at 1033. On the record in this case, however, no reasonable finder of fact could determine that a deck opening without a ramp would not be obvious to an experienced and competent automobile stevedore. *See Howlett,* ——— U.S. at ———, 114 S.Ct. at 2063.

The record also supports no dispute as to the avoidability of this type of hazard. Gill and McCourt have both testified that, ordinarily, a stevedore employs cones, arrows, stop signs, painted lines, tape and/or individual traffic supervisors to ensure that the longshore workers do not deviate from the designated exit route. Gill Dep. at 15;

McCourt Dep. at 33. They have also both testified that a "leader" familiar with the route usually guides a string of automobiles off the carrier. Gill Dep. at 32; McCourt Dep. at 25, 28. Finally, Gill explained at deposition that hatches from which ramps are removed are normally marked and protected by rope, tape or chains. Gill Dep. at 30. The record establishes no dispute as to the fact that this type of hazard can easily be avoided by a stevedore employing simple and commonly utilized precautions.

Therefore, the Court finds that defendant is entitled to summary judgment that it did not violate its turnover duty or duty to warn. Under these circumstances the vessel reasonably could expect the stevedore to avoid the danger and to conduct its cargo operations reasonably safely.

*Active Operations Duty*

■ A vessel has a duty, dubbed the "active operations duty," to prevent injuries to longshore workers employed in areas of the vessel under the "active control of the vessel during the stevedoring operation." *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622; *Howlett,* —— U.S. at ——, 114 S.Ct. at 2063; *Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 539 (3d Cir.1994). In order for this duty to be triggered, the vessel must have substantially controlled or been in charge of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook. *Davis,* 16 F.3d at 540.

■ Plaintiff argues that the active operations duty was triggered in this case because the vessel controlled the area in which plaintiff was working. He bases this assertion exclusively on Gill's statement at deposition that, after the accident occurred, he observed that McCourt had driven outside the orange cones marking the exit route. Gill Dep. at 23. However, Gill testified that he was not on the vessel when he was alerted that the accident occurred. *Id.* at 20. He also testified that:

> I don't interfere with them [the stevedore and longshore workers] as far as their operation is concerned. I observe, if I was to see something wrong in my opinion I

would communicate with the superintendent, and that's all I would do.

*Id.* at 12. He further swore that he would not interfere with the manner in which the stevedore discharged the cars or the area in which the stevedore was working. *Id.* On the day of the accident, Gill observed that the cones had been set in place by the stevedore at approximately 7:30 a.m., before the discharge began. *Id.* at 28. The only other testimony as to Gill's whereabouts during the discharge is his comment that he was returning to the ship from the parking lot at the time of the accident, which plaintiff has approximated as around 9:30 or 10:00 a.m. Gill Dep. at 28; McCourt Dep. at 29. Plaintiff has testified that he did not see any members of the crew or employees of the vessel on the morning of his accident. McCourt Dep. at 17–18.

Viewing this record in the light most favorable to McCourt, and drawing all inferences in his favor, the Court finds that a reasonable jury could not determine that the vessel remained in active control of the area in which McCourt was working. Gill testified, and McCourt has not disputed, that he was present merely as an observer who retained the right to interfere on behalf of the vessel. Gill Dep. at 12. The *Davis* court specifically explained that "the vessel's mere reservation of the right to intervene to protect the ship's and its crew's interests, or to eject the stevedore at any time, does not amount to the substantial control necessary to trigger the vessel's active operations duty as long as the vessel does not exercise those reserved rights." 16 F.3d at 541. In *Davis,* the court ruled that the question of substantial control or interference should have been submitted to a jury because the record reflected that the plaintiff in that case slipped on a patch of ice created by a member of the vessel's crew who hosed down the deck while the longshore workers were unloading the ship. *Id.*

Nothing in the record indicates that Gill exercised his right to interfere on behalf of the defendant or that the vessel in any other way exercised any control over the area in which plaintiff was working at the time of his accident. On this record, a reasonable jury could not find "that the vessel exercised

control or took charge over an area either because it never turned exclusive control of the area over to the stevedore but retained substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control, such as by actively intervening in the area." *Id.* Therefore, the Court will enter summary judgment in favor of defendant that it is not liable to plaintiff under the active operations duty.

The Court notes that it makes no judgment here as to the negligence of the stevedore, which is clearly thrown into dispute by this record. The Court's ruling rests solely on a legislative scheme whose goal is to place primary responsibility for the safety of longshore workers on the shoulders the their employing stevedores. As the Supreme Court noted in *Howlett:*

> Subjecting vessels to suit for injuries that could be anticipated and prevented by a competent stevedore would threaten to upset the balance Congress was careful to strike in enacting the 1972 Amendments.

—— U.S. at ——, 114 S.Ct. at 2063.

Accordingly, **IT IS** on this 16th day of April, 1996 **ORDERED** that defendant's motion for summary judgment is granted and the entire action is dismissed.